The STATE ex rel. ASSOCIATED BUILDERS AND CONTRACTORS, CENTRAL OHIO CHAPTER et al., Appellees,

v.

JEFFERSON COUNTY BOARD OF COMMISSIONERS; Upper Ohio Valley Building and Construction Trades Council et al., Appellants.*

[Cite as *State ex rel. Associated Bldrs. & Contrs., Cent. Ohio Chapter v. Jefferson Cty. Bd. of Commrs.* (1995), 106 Ohio App.3d 176.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 94–J–49.

Decided Aug. 31, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1499, 659 N.E.2d 314.

*Ronald L. Mason* and *Michael J. Galeano*, for appellees.

*Stephen M. Stern*, Jefferson County Prosecuting Attorney, for Jefferson County Board of Commissioners.

*Ronald G. Macala* and *Anthony M. DioGuardi II*, for appellants.

*N. Victor Goodman* and *Mark D. Tucker*, for *amicus curiae*, Ohio State Building & Construction Trades Council.

GENE DONOFRIO, Judge.

Defendants-appellants, Upper Ohio Valley Building and Construction Trades Council and International Brotherhood of Electrical Workers Local Union 246, hereby appeal from an order of the Jefferson County Common Pleas Court granting summary judgment in favor of plaintiffs-appellees, Associated Builders and Contractors, Inc., Central Ohio Chapter ("ABC"), G.E.M. Electric Company ("G.E.M. Electric") and Guy Johnston Construction Company ("Johnston Construction").

In March 1994, the Board of Commissioners of Jefferson County, Ohio, approved a project labor agreement ("PLA") relative to the construction of the Jefferson County/City of Steubenville Joint Jail Facility Project ("jail project"). The agreement was drafted for the express purpose of facilitating the orderly performance of work on the jail project by eliminating work stoppages, slowdowns and other interferences. Accordingly, the agreement imposed uniform procedures for dealing with labor disputes, contained a comprehensive no-strike clause, established a standardized work week and contained other provisions which made uniform the working conditions for all contractors, subcontractors and workers on the project.

The PLA provided that, as a condition to being engaged to perform work on the project, successful bidders were required to execute applicable local collective bargaining agreements for work on the project. These would expire immediately following the last day of work on the project. For contractors that were not signatory to collective bargaining agreements prior to commencing work on the jail project, the bargaining agreements entered into thereunder were not to be applied to other works in progress or to jobs which were bid prior to execution of the bargaining agreements.

The PLA also required contractors performing construction work on the project to utilize the registration facilities and referral systems operated by the local unions in filling job vacancies. However, the PLA specifically provided that the selection of applicants for work on the project would be on a non-discriminatory basis and would not "be based on, or in any way affected by, union or trade group membership, bylaws, rules, regulations, constitutional provisions or any other aspect or obligation of union or trade group membership." In addition, the PLA provided that contractors would retain the right to reject any applicant for employment.

Appellees G.E.M. Electric and Johnston Construction are contractors or subcontractors who employ non-union labor. Neither G.E.M. Electric nor Johnston Construction submitted a bid for work on the project although both of them inquired as to the project. Appellee ABC is an organization comprised primarily of "open shop" contractors. ABC does not engage in the construction business and did not submit a bid on the project.

After bids were awarded on the project, but prior to the execution of contracts for the project, appellees initiated the instant suit against the board of commissioners seeking to nullify the awards. Appellants subsequently intervened as defendants in this matter. This action was subsequently consolidated with a declaratory judgment action filed by the board of commissioners seeking a determination as to the legality of the project labor agreement.

On cross-motions for summary judgment, the trial court found in favor of appellees, declared the entire bidding process, including the PLA, null and void, and ordered the board of commissioners to accept new bids for the jail project. Appellants then filed this appeal.

■ Appellants have listed seven assignments of error. In the first three, appellants argue that the trial court erred in concluding that the PLA violates Ohio's competitive bidding statutes and the Ohio Constitution.

Appellants cite *Bldg. & Constr. Trades Council of the Metro. Dist. v. Assoc. Builders & Contrs. of Massachusetts/Rhode Island, Inc.* (1993), 507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed.2d 565 *("Boston Harbor")*, in arguing that project labor

agreements such as the one at issue in the instant case are permissible. In *Boston Harbor*, the United States Supreme Court held that the National Labor Relations Act ("NLRA") does not preempt enforcement by a state governmental authority, acting as the owner of a construction project, of an otherwise lawful prehire collective bargaining agreement negotiated by private parties.

While the prehire agreement at issue in *Boston Harbor, supra*, is similar to the PLA at issue in the instant case, we find that *Boston Harbor* is not dispositive of the issues presented herein since the Supreme Court expressly stated in *Boston Harbor* that only NLRA preemption was at issue therein.

While we find that *Boston Harbor* is not dispositive, we nonetheless find that the trial court in the instant case erred in determining that the PLA violates the competitive bidding laws of Ohio and/or the Ohio Constitution. We begin with an examination of *State ex rel. United Dist. Heating, Inc. v. State Office Bldg. Comm.* (1931), 124 Ohio St. 413, 179 N.E. 138 *("Dist. Heating I")* and *State ex rel. United Dist. Heating, Inc. v. State Office Bldg. Comm.* (1932), 125 Ohio St. 301, 181 N.E. 129 *("Dist. Heating II")*, cited by the trial court. In *Dist. Heating I*, the State Building Commission had solicited proposals for the construction of a steam and transmission line between two state buildings. The relator, United District Heating, Inc., submitted the lowest bid and was subsequently awarded the contract. The building commission later rescinded the award after it learned that the relator employed nonunion labor. In an original mandamus action brought by the relator, the Supreme Court of Ohio overruled the demurrer to the petition and granted leave to answer. Upon authority from other states, the Supreme Court held that an administrative board may not so exercise its discretion as to refuse to accept a bid solely on the ground that nonunion labor might be employed on a public project.

After the building commission filed its answer, the Supreme Court issued its decision in *Dist. Heating II*. In *Dist. Heating II*, the Supreme Court reaffirmed its prior holding that a public construction contract may not be denied to the lowest bidder solely upon the basis that the contractor employs nonunion labor or doesn't employ exclusively union labor. In so holding, the Supreme Court found that a public entity unconstitutionally discriminates when it exercises its discretion in that manner.

Reviewing the facts of the instant case in light of the holdings in *Dist. Heating I* and *II*, we find the instant case easily distinguishable. In the instant case, no person or entity was foreclosed from submitting a bid on the jail project. The PLA does not distinguish between entities employing union labor and those employing nonunion labor. It applies equally to all prospective bidders, with stated stipulations. Further, the PLA does not require any contractor to become a "union" employer. It simply requires any person or entity, as a condition for

being engaged to perform work on the project, to agree to be bound by the same rules and restrictions as all others similarly engaged. In addition, the PLA provides that collective bargaining agreements entered into thereunder apply only while a contractor or a subcontractor is performing work on the project.

We note that while the PLA requires contractors to use the registration facilities of local unions, the selection of applicants for work on the project is required to be done on a nondiscriminatory basis, without regard to union or trade group membership. As *amicus curiae* has aptly pointed out, all construction labor unions are required by federal law to operate nondiscriminatory hiring halls. Qualified nonunion employees may ask to be placed upon the hiring hall referral list. Thus, under the PLA, no individual or contractor is precluded from working on the project based upon their affiliation or nonaffiliation with a labor union.

Furthermore, the agreement does not conflict with the purposes underlying Ohio's competitive bidding statutes. The purpose of such statutes is to enable a public contracting authority to obtain the best work at the lowest possible price while guarding against favoritism and fraud. See *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202, 204–205. A county board of commissioners has the discretion to select the "lowest and best bid" for its construction projects. See R.C. 307.86 through 307.90. An award of a competitively bid contract is within the sound discretion of the contracting authority whose decision will not be interfered with absent an abuse of discretion. *Cedar Bay Constr., Inc. v. Fremont, supra; Wilson Bennett, Inc. v. Greater Cleveland Regional Transit Auth.* (1990), 67 Ohio App.3d 812, 588 N.E.2d 920.

While announcing selection criteria after bids are opened can constitute an abuse of discretion, *Dayton ex rel. Scandrick v. McGee* (1981), 67 Ohio St.2d 356, 21 O.O.3d 225, 423 N.E.2d 1095, adhering to previously announced selection criteria is not an abuse of discretion. Rather, adhering to such criteria promotes the noteworthy purposes underlying the competitive bidding statutes and ensures an even playing field for all prospective bidders.

In addition, we note that all contractors performing work on public projects in Ohio are required to pay prevailing wages under R.C. 4115.032 through 4115.05. Thus, the statutes' goal of fostering competition among bidders is not negated by the PLA.

We note that the United States District Court for the Northern District of Ohio has recently considered this issue. In *Enertech Elec., Inc. v. Mahoning Cty. Bd. of Commrs.* (Apr. 28, 1994), N.D.Ohio No. 4:93 CV 1746, unreported, 1994 WL 902493, the district court determined that the PLA at issue in that case did not violate Ohio's competitive bidding laws. We cite that case with approval.

We find that the PLA at issue herein violates neither Ohio's competitive bidding laws nor the Ohio Constitution. The trial court erred in so finding.

Appellants' first three assignments of error are sustained.

■ In the fourth assignment of error, appellants argue that the trial court erred in concluding that appellees had standing to challenge the PLA since neither G.E.M. Electric nor Johnston Construction submitted bids for work on the project. Further, appellants note that ABC is not a construction contractor or subcontractor and, accordingly, was never even in a position to submit a bid. Finally, appellants argue that appellees lack standing as taxpayers since no written application to the prosecuting attorney was made under R.C. 309.13 and, in any event, ABC is not a taxpayer in Jefferson County.

■ In order to have standing to challenge the award of a contract on a public construction project in Ohio, a contractor must have submitted a bid on the project. See *Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 643 N.E.2d 1088. In addition, in order for an association to have standing on behalf of its members, the association, among other things, must establish that its members have suffered actual injury. *Id.* Such actual injury cannot be established unless one of its members has been denied the award of a contract upon which the member submitted a bid. *Id.* Based upon the foregoing, it is clear that ABC lacked standing to pursue this matter as none of its members submitted bids on the project. Further, as neither G.E.M. Electric nor Johnston Construction submitted a bid on the project, they likewise lacked standing below.

■ Finally, the procedures set forth at R.C. 309.13 for the filing of a taxpayer's lawsuit were not followed in this case. The giving of a written request to the prosecuting attorney and his refusal to bring suit are prerequisites to the right of a taxpayer to maintain an action. See *State ex rel. Houghton v. Pethtel* (1941), 138 Ohio St. 20, 19 O.O. 479, 32 N.E.2d 411; *Wilson Bennett, Inc. v. Greater Cleveland Regional Trans. Auth., supra,* 67 Ohio App.3d at 818, 588 N.E.2d at 924.

Based upon the foregoing, we find that appellees lacked standing to challenge the legality of the PLA and the award of contracts with regard to the jail project.

Appellants' fourth assignment of error is sustained.

In the fifth and sixth assignments of error, appellants argue that the trial court erred in determining that the claims of appellees were not moot or barred by the doctrine of laches.

■ We have found that in order for a contractor to have standing to challenge the award of a contract on a public construction project, the contractor must have submitted a bid on the project. Such a ruling compels us to conclude

that the instant controversy was not moot at the time appellees filed their complaint. For the same reason, we find that the challenge was not barred by the doctrine of laches. To rule otherwise would place future aggrieved contractors in the untenable position of having no remedy available to them either because they submitted no bid or, having submitted one, they waited to see whether they were aggrieved or not and then were subjected to having their challenge rejected as untimely.

Appellants' fifth and sixth assignments of error are overruled.

In the seventh and final assignment of error, appellants argue that the trial court erred by issuing an injunctive order in the absence of a showing of irreparable harm.

Because we have found in the first three assignments that the PLA at issue herein does not violate Ohio's bidding laws or the Ohio Constitution, it was error for the trial court to grant injunctive relief in this case.

Appellants' seventh assignment of error is sustained.

The judgment of the trial court is reversed and judgment is entered in favor of appellants consistent with this opinion.

*Judgment reversed.*

O'NEILL, P.J., and Cox, J., concur.