85 F.3d 257
 152 L.R.R.M. (BNA) 2496
 ENERTECH ELECTRICAL, INC., Plaintiff-Appellant,
v.
MAHONING COUNTY COMMISSIONERS; Mahoning County Building
Commission, Defendants-Appellees,
Local 64 International Brotherhood of Electrical Workers,
Intervenor-Appellee.
 No. 94-3601.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 25, 1995.
Decided June 7, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied July 30, 1996.
 
 Peter D. Welin (argued and briefed), Arter & Hadden, Columbus, OH, for Plaintiff-Appellant Enertech Electrical, Inc.
 John E. Lynch, Jr. (argued and briefed), Marsha L. Montgomery, Squire, Sanders & Dempsey, Cleveland, OH, for Defendants-Appellees Mahoning County Commissioners, Mahoning County Building Commission.
 Dennis Haines (argued and briefed), Barry R. Laine, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, for Intervenor-Appellee Local 64 International Brotherhood of Electrical Workers.
 Victoria L. Bor (briefed), Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC, for Amicus Curiae Building and Construction Trades.
 Michael J. Galeano and Ronald L. Mason (briefed), Emens, Kegler, Brown, Hill & Ritter, Columbus, OH, for Amicus Curiae ABC, Inc.
 Before: JONES and DAUGHTREY, Circuit Judges; GIBSON, District Judge.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiff-Appellant Enertech Electrical, Inc. ("Enertech") appeals the district court's grant of summary judgment to Mahoning County ("County") in this action brought under 42 U.S.C. § 1983. Enertech sued the County after losing on its bid to be the electrical contractor for the County's Justice Center construction project. The district court granted summary judgment to the County, holding that Enertech had failed to allege a deprivation of a constitutionally guaranteed property interest. For the reasons stated herein, we AFFIRM the decision of the district court.
 
 I.
 
 2
 On April 26, 1993, the Mahoning County Board of Commissioners began to solicit bids for its Youngstown Justice Center construction project. The project was divided into seven different bid packages, including one for electrical work. To aid the bidding process, the County published an employee handbook, which prospective bidders could obtain from the offices of the County's project consultants. The foreword to the handbook announced that the County had negotiated a Project Labor Agreement ("PLA") with the Western Reserve Building and Construction Trades Council to govern the duties and responsibilities of all persons working on the project and to promote labor harmony. See J.A. at 91. The foreword further stated that all trade contractors who performed work on the project would be required to ratify the Project Labor Agreement contained in the handbook and operate under its terms. Id. at 218.
 
 
 3
 At the May 1993 pre-bid meeting, which Enertech's president attended, County representatives informed bidders that aspects of the PLA were still under negotiation. As of this meeting, the local bargaining representative for electricians had not been selected.
 
 
 4
 On June 15, 1993, Enertech submitted a bid for the electrical package. As part of the bid review process, the County mailed Enertech a brief questionnaire on June 17, 1993, asking the company whether it intended to abide by the terms of the PLA if its bid were determined to be the lowest and most responsive. The questionnaire asked Enertech to check a box indicating whether it would "agree" or "disagree" to do the following: (1) sign the Employee Manual/Project Labor Agreement; (2) sign the local collective bargaining agreements (for this project only); and (3) commit to safety criteria. J.A. at 219. On June 18, 1993, Enertech wrote a letter informing the County Building Commission that the union which represented its electricians was not signatory to the PLA, and that it was currently negotiating a collective bargaining agreement with its own electricians. While Enertech indicated it would commit to the safety criteria, the company did not agree to sign the PLA. J.A. at 221. Enertech knew by this time that the County had negotiated with International Brotherhood of Electrical Workers ("IBEW") Local 64 to serve as the collective bargaining agent for the electrical workers on the project.
 
 
 5
 After a problem with one of the other packages altered the specifications of the electrical package, the County called for a rebid on this package. Enertech resubmitted its bid on August 12, 1993. The County determined Enertech to be the apparent low bidder and offered the contract to Enertech, on the express condition that Enertech sign the PLA and the collective bargaining agreement of the designated local bargaining representative, IBEW Local 64. See J.A. at 224-25. The County acknowledged Enertech's previous resistance to these requirements and set a deadline of August 17, 1993 for Enertech to ratify the collective bargaining agreement of the designated local union. Id. Again, Enertech refused. Enertech replied that it would sign the documents, but because neither the PLA nor the pre-bid documents had specified that Local 64 was the collective bargaining agent for the project, Enertech would consider Local 573 as the appropriate agent for its employees. J.A. at 58. Once again the County mailed a letter stating its position, see J.A. at 60-1, and again Enertech maintained that it would not sign the collective bargaining agreement of Local 64, see J.A. at 62-3.
 
 
 6
 Enertech then filed a § 1983 action in the district court alleging deprivation of its constitutional property right to the contract without due process of law, abuse of discretion on the part of the County officials, and violations of the National Labor Relations Act ("NLRA"). Enertech sought a declaration from the district court that it was the lowest and most responsive bidder and a declaration that the Project Labor Agreement was illegal. Enertech further asked the court to enjoin preliminarily and permanently the County from enforcing the PLA. Finally, Enertech sought an award of its costs and fees.
 
 
 7
 The district court denied Enertech's motion for a preliminary injunction, holding that an adequate remedy existed at law. The County then awarded the contract to the next lowest bidder. Enertech filed an amended complaint, adding a request for damages for profits lost due to the County's awarding the contract to the next lowest bidder.
 
 
 8
 The district court granted Local 64's motion to intervene as a Defendant. The County moved to dismiss or, in the alternative, for summary judgment. Local 64 moved for judgment on the pleadings or, in the alternative, for summary judgment. The district court concluded that no genuine issues of material fact existed and granted summary judgment in favor of the County and Local 64. Enertech appealed.
 
 II.
 
 9
 We review a district court's grant of summary judgment de novo, applying the same standards as the district court. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir.1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986), and citing Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990); Curry v. Vanguard Ins. Co., 923 F.2d 484, 485 (6th Cir.1991)). Summary judgment is appropriate when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 III.
 
 10
 We will first address the district court's grant of summary judgment on Enertech's § 1983 claim. Before the district court, Enertech alleged deprivations of its Fifth and Fourteenth Amendment rights to procedural and substantive due process and deprivations of rights secured by the NLRA. On appeal, however, Enertech has neither articulated a theory of substantive due process violations nor pursued its argument that the PLA violates the NLRA; we will therefore consider these issues abandoned. See Priddy v. Edelman, 883 F.2d 438, 446 (6th Cir.1989) (issues not raised in appellant's opening brief will not be considered on appeal) (citing Wright v. Holbrook, 794 F.2d 1152, 1157 (6th Cir.1986)). In the second part of our analysis, we will address Enertech's argument that PLAs violate Ohio's Competitive bidding statutes and are therefore void as a matter of law.
 
 A.
 
 11
 To prevail on § 1983 claim, a plaintiff must establish that the defendant acted under the color of state law to deprive the plaintiff of a right secured by the Constitution or laws of the United States. United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 33 (6th Cir.1992). A constitutionally protected property interest in a publicly bid contract can be demonstrated in two ways. A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the County had limited discretion, which it abused, in awarding the contract. United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir.1992); Peterson Enterprises, Inc. v. Ohio Dept. of Mental Retardation and Developmental Disabilities, 1989 WL 143563 (unpublished per curiam) (6th Cir. 1989). Enertech claims that the County did not have the discretion to condition the award of the contract on ratification of the PLA, and consequently that it abused its discretion by denying the contract to Enertech, who submitted the lowest dollar bid. We must disagree.
 
 
 12
 Section 307.90 of the Ohio Revised Code stipulates that the grant of publicly bid contracts are to be made to the "lowest and best bidder." Ohio Rev.Code Ann. § 307.90 (Anderson 1992). The Ohio Supreme Court has held that "when the statute provides for the acceptance of the lowest and best bid the [county] is not limited to an acceptance of merely the lowest dollar bid." Cedar Bay Constr., Inc. v. City of Fremont, 50 Ohio St.3d 19, 552 N.E.2d 202, 205 (1990) (citations omitted). Rather, the statute "places in the hands of the [county] authorities the discretion of determining who under all of the circumstances is the lowest and best bidder." Id. (emphasis added). The local government is empowered to make a qualitative determination as to which bid was both lowest and best. City of Dayton ex rel. Scandrick v. McGee, 67 Ohio St.2d 356, 423 N.E.2d 1095, 1097 (1981).
 
 
 13
 The discretion to award a contract based on the lowest and best bid is not vested in the courts, and "the courts cannot interfere in the exercise of this discretion unless [the contracting authority] abused its discretion or acted fraudulently." Wilson Bennett, Inc. v. GCRTA, 67 Ohio App.3d 812, 588 N.E.2d 920, 925 (1990). In this context, an abuse of discretion "implies an unreasonable, arbitrary or unconscionable attitude...." Scandrick, 423 N.E.2d at 1097 (quotations and citations omitted). "Arbitrary means without adequate determining principle; ... not governed by any fixed rules or standard. Unreasonable means irrational." Id. (quotations and citations omitted).
 
 
 14
 We do not believe the county abused its discretion by determining that the "best" bidder would be a bidder willing to ratify the PLA. These terms, the ratification of the PLA and applicable local collective bargaining agreements, were added to secure labor harmony on the project and to govern the rights and responsibilities of project participants. The insertion of these terms is not inconsistent with Ohio's competitive bidding policy. Ohio's competitive bidding statutes were enacted " 'to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms.' " Cedar Bay, 552 N.E.2d at 204 (quoting Chillicothe Bd. of Ed. v. Sever-Williams Co., 22 Ohio St.2d 107, 258 N.E.2d 605, 610 (1970)). The PLA was included in the bidding process from the beginning, and it in no way interfered with openness and honesty of the bidding process. Furthermore, we find that the inclusion of the PLA in this bidding process neither resulted in favoritism nor fraud. We therefore conclude that in making ratification of the PLA a criterion for determining the lowest and best bidder, the County acted within its statutorily granted discretion.
 
 
 15
 Enertech did not meet the requirement of signing the PLA and ratifying the collective bargaining agreement of the selected union. Consequently, Enertech was never determined to be the lowest and best bidder. The County was therefore authorized by statute to award the contract to the next lowest bidder. Enertech has failed to allege any constitutionally protected property interest in the contract. The award of summary judgment for Defendants on the procedural due process claim was proper.
 
 
 16
 Before the district court, Enertech further contended that the County abused its discretion by conditioning the award of the contract on the adoption of Local 64's collective bargaining agreement, a requirement that Enertech alleges, which was not announced prior to the bidding period. We find that we do not need to address this issue. Because this is another line of argument Enertech has excluded from its appellate briefs, we consider the issue abandoned. See Priddy v. Edelman, 883 F.2d at 446.
 
 B.
 
 17
 On appeal, Enertech has advanced another argument for demonstrating that Mahoning County abused its discretion in awarding the contract. Enertech alleges that project labor agreements are prohibited by Ohio's competitive bidding statutes, and that in inserting the PLA into the bidding process, the County abused its discretion by violating Ohio law. Enertech argues that this abuse of discretion represents a deprivation of its property right in the contract, see Peterson, supra, and serves as a legitimate basis for its § 1983 claim. Enertech has also moved to have the issue of "whether PLAs violate Ohio competitive bidding law" certified to the Ohio Supreme Court.
 
 
 18
 Defendants object to this line of argument because Enertech failed to present this theory of abuse of discretion to the district court. They argue that Enertech's failure to pursue this theory of its case below resulted in a waiver of the issue. See Brickner v. Voinovich, 977 F.2d 235, 238 (6th Cir.1992) (arguments not presented to the district court are generally considered waived), cert. denied, 508 U.S. 974, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993).
 
 
 19
 Although we have been urged by Enertech as well as amici curiae, Associated Builders and Contractors, Inc. and Ohio ABC, Inc., we decline to reach the argument regarding the general legality of project labor agreements in Ohio public works contracts.
 
 
 20
 When a party fails to present an argument to the district court, we have discretion to resolve the issue only where the proper resolution is beyond any doubt, or where injustice might otherwise result. Brown v. Crowe, 963 F.2d at 897-98; Newmyer v. Philatelic Leasing, Ltd., 888 F.2d 385, 387 (6th Cir.1989), cert. denied, 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990). We cannot say that proper resolution of this issue is without any doubt. Although the highest court in Ohio to reach this issue has determined that Ohio competitive bidding law does not prohibit project labor agreements wholesale, see State ex rel. Associated Builders and Contractors, Central Ohio Chapter et al. v. Jefferson County Bd. of Comm'rs, 106 Ohio App.3d 176, 665 N.E.2d 723 (Ohio.Ct.App.1995), appeal dismissed, 74 Ohio St.3d 1499, 659 N.E.2d 314 (1996), the Ohio Supreme Court has not spoken on this issue. In fact, the Ohio Supreme Court has declined to review this very question. 74 Ohio St.3d 1499, 659 N.E.2d 314 (1996). Further, we do not find that injustice would result from allowing the issue to be addressed in the first instance by the district court in the context of a properly developed record. See Newmyer, 888 F.2d at 397-98 (6th Cir.1989).
 
 IV.
 
 21
 For the reasons stated above, we find that the grant of summary judgment against Enertech was proper. Consequently, we AFFIRM the decision of the district court and DENY Enertech's motion for certification to the Ohio Supreme Court.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation