A. PICKETT CONSTRUCTION, INC., Lackawanna Land & Energy, Inc., K & K Electric, Inc., Pinnacle Roofing & Sheet Metal, Inc., and Central Pennsylvania Chapter, Associated Builders and Contractors, Inc., Appellants,

v.

LUZERNE COUNTY CONVENTION CENTER AUTHORITY.

Commonwealth Court of Pennsylvania.

Argued April 13, 1999.

Decided Aug. 11, 1999.

Thomas R. Davies, Lancaster, for appellants.

Thomas P. Brogan, Harrisburg, for appellee.

Before McGINLEY, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

A. Pickett Construction, Inc., Lackawanna Land & Energy, Inc., K & K Electric, Inc., Pinnacle Roofing & Sheet Metal, Inc., and Central Pennsylvania Chapter, Associated Builders & Contractors, Inc. (collectively, Appellants) appeal from an order of the Court of Common Pleas of Luzerne County (trial court) which denied Appellants' motion for summary judgment and granted Luzerne County Convention Center Authority's (Authority) motion for summary judgment. We affirm.

Four of the Appellants are contractors who are non-union. The fifth appellant, Central Pennsylvania Chapter, Associated Builders & Contractors, Inc., is a not-for-profit association of mostly non-union contractors. The Authority was formed pursuant to the Municipalities Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301–322, (the Act or the competitive bid statute) in 1994 for the construction of a civic arena-convention center in Luzerne County (the Project). After an Authority Board meeting conducted on August 28, 1997, the Authority commissioned James M. O'Neill (O'Neill) to evaluate and make recommendations on the inclusion of a Project Labor Agreement (PLA) in the bidding process for the Project. A PLA is an agreement between a government authority and a collection of

unions represented by a council (often a construction trades council) which applies to parts of a construction project. The terms of PLAs vary according to the terms negotiated in each agreement. The PLA at issue herein requires *inter alia* that all contractors who submit bids to the Authority agree to employ a certain number of union laborers at union wages, regardless of whether the contractor is a union shop or not.

O'Neill issued his report (the O'Neill Report) which recommended the inclusion of a PLA as part of the bidding process. The O'Neill Report gave the following as the principal justifications for such inclusion: 1) the avoidance of costly delays occasioned by labor disruption in a heavily unionized labor environment of Northeastern Pennsylvania, if the PLA were not included, 2) the promotion of labor harmony for the duration of the Project, 3) the necessity to adhere to a tight inflexible construction deadline, given the loss of an anchor tenant and significant state funding if construction were not completed by a certain date, 4) significant cost savings and management flexibility for the Project and 5) the assurance of a large pool of skilled and experienced labor for the Project. The O'Neill report noted that the most significant consideration in utilizing the PLA was the inflexible deadline by which the Project had to be completed. The O'Neill report found that

> [i]n general terms, the size and complexity of this Project are significant factors that help meet the tests for utilizing a PLA, such as or similar to the attached PLA. As noted above, this Project is one of the largest construction projects in the history of Northeastern Pennsylvania and will involve thirteen trades, specialized construction needs, and millions of dollars, such size and complexity makes [sic] a PLA more appropriate than in other settings. In addition **and of the greatest significance to this analysis is the critical time element of an inflexible October 1, 1999 comple-**

> **tion deadline mandated by the outside forces of the State through its funding terms and the anchor tenant hockey team through its contractual terms and requirements. The Arena's existence thus depends on the construction deadline being met. The absolute requirement that there be no work interruption, disruption or stoppage on this Project makes a PLA more appropriate than in other settings where timely, uninterrupted completion is not as critical.**

O'Neill Report at Reproduced Record (R.R.) at pp. 296–97 (emphasis added).

At its November 13, 1997 meeting, the Authority accepted the recommendation in O'Neill's Report and approved the use of a PLA. Following that meeting, the Authority and the Northeast Pennsylvania Building and Construction Trades and its affiliated unions among others entered into the PLA which provided, *inter alia*, that the "construction work covered by this Agreement [the PLA] shall be contracted exclusively to Contractors who agree to execute and be bound by the terms of [the PLA]." R.R. at p. 310.

On January 7, 1998, the Appellants filed a complaint in the trial court seeking a declaratory judgment that the actions of the Authority in embracing the PLA were contrary to the requirements of Pennsylvania's competitive bidding statutes. On February 27, 1998, the Appellants and the Authority both filed their respective motions for summary judgment. By order dated June 1, 1998, the trial court denied Appellants' motion for summary judgment and granted the Authority's motion for summary judgment. From this order, the Appellants timely appealed to this court.

■ Appellate review over the grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Blocker v. City of Philadelphia*, 729 A.2d 187 (Pa.Cmwlth.1999).

The sole issue which the Appellants present is: whether the use of a PLA which requires, *inter alia*, the successful bidder for work on the Northeastern Pennsylvania Civic Arena to enter into a labor agreement with the Northeastern Pennsylvania Building and Construction Trades Council is contrary to the competitive bidding requirements set forth in Section 10 of the Act, 53 P.S. § 312(a).[1] Section 10 of the Act provides in relevant part that

[a]ll construction, reconstruction, repairs or work of any nature made by any Authority, where the entire cost, value or amount of such construction, reconstruction, repairs or work, including labor and materials, shall exceed ten thousand dollars ($10,000) ... shall be done only under contract or contracts with the lowest responsible bidder upon proper terms, after due public notice has been given asking for competitive bids as hereinafter provided.

The Appellants essentially argue that the purpose of the requirement to publicly bid contracts and award them to the "lowest responsible bidder" is to insure against favoritism in the award of such contracts and to protect taxpayers. The Appellants argue that the PLA will discourage non-union contractors from even bidding on projects because the requirement to employ union members on jobs will necessitate drastic revisions in how these contractors structure the working relationships with their employees, thereby effectively restricting the pool of eligible contractors and lessening competition. According to Appellants, the PLA guts the lowest responsible bidder mandate of the Legislature.

At first blush, the form of Appellants' argument appears to be that the PLA specification in the bid causes the cost of the proposed project and hence the respective bids to be higher than they would have been without the PLA specification. Indeed, the Authority even characterizes the Appellants' argument as requiring that the contract be awarded to the lowest cost bidder. See Authority's brief at pp. 20–22. However, Appellants' argument cannot simply be that the PLA specification raises the cost of the project and therefore is illegal because many specifications have this effect. Indeed, the Appellants assert that they are not arguing that the PLA specification violates the competitive bid requirement merely on the basis that it raises the cost of the project. See e.g., Appellant's reply brief at p. 2 ("Appellants must take issue with the Authority's claim that Appellants are seeking to convert the bidding law's 'lowest responsible bid' requirement into a 'lowest cost' requirement."). Rather, Appellants are arguing that inclusion of the PLA specification violates the competitive bid statute because it "is contrary to law for government contracts [to be awarded based upon specifications] which do not relate to the responsibility of the bidders and which deter substantial numbers of qualified bidders from offering their services on the contract." Appellant's reply brief at p. 3. This attack appears to be twofold. First, Appellants imply that because the PLA specification bears no relationship to whether a bidder can be deemed "responsible" within the meaning of the "lowest responsible bidder" language of the competitive bid statute, inclusion of such a specification violates the statute. Second, Appellants assert that the inclusion of the PLA specification unduly favors the award of government contracts to union contrac-

---

1. In its brief to this court, the Authority challenges whether the Appellants had standing to even initiate this suit. Authority's brief at pp. 31–33. However, as Appellants point out, Authority raises the issue of standing for the first time in this appeal and failed to raise this issue in the trial court. As such, Appellants argue the issue of their standing to bring suit is waived. We agree. *In re Estate of Schram,* 696 A.2d 1206, 1209 n. 4 (Pa.Cmwlth.1997), *allocatur denied,* 550 Pa. 712, 705 A.2d 1313 (1997)("a party may waive its opportunity to contest the standing of another party by not raising the issue in a timely manner.").

tors, again in violation of the competitive bid statute.

■ In considering Appellants' arguments, we begin with fundamental principles. Drawing up the terms of, and the award of a contract to the "lowest responsible bidder" involves the exercise of discretion by the contracting authority. *Hibbs v. Arensberg*, 276 Pa. 24, 29, 119 A. 727, 729 (1923)("The term 'lowest responsible bidder' does not mean the lowest bidder in dollars; nor does it mean that the board may capriciously select the highest bidder regardless of responsibility or cost. What the law requires is the exercise of a sound discretion."). *Accord Kratz v. City of Allentown*, 304 Pa. 51, 54, 155 A. 116, 117 (1931)("The statute requires that the municipal contracts be let to the lowest responsible bidder, but the courts have uniformly held that the question of who is the lowest responsible bidder is one for the sound discretion of the proper municipal authority and does not necessarily mean the one whose bid on its face is lowest in dollars, but includes financial responsibility, also integrity, efficiency, industry, experience, promptness, and ability to successfully carry out the particular undertaking.") Moreover, the burden of proving that the discretion of those authorities who set the terms of the bid and award the contract was abused is on the one asserting such a proposition. For the law in this Commonwealth is that public

> officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after an investigation. When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden; courts can and will interfere only when it is made apparent this discretion has been abused.

*Wilson v. City of New Castle*, 301 Pa. 358, 365, 152 A. 102, 104 (1930).

■ Thus, Appellants' first argument boils down to the assertion that the Authority abused its discretion in requiring successful bidders to sign the PLA because such a requirement "do[es] not relate to the responsibility of the bidders" within the meaning of the "lowest responsible bidder" language of the competitive bidding statute. *See* Appellant's brief at p. 3. However, Appellants' assertion simply fails to comprehend that in the exercise of the Authority's discretion to draw up the specifications of the bid and award the contract, the Authority's assessment of that "responsibility" properly includes an assessment of need for promptness and timely completion of the project. *See, e.g., Kratz v. City of Allentown* and *Wilson v. City of New Castle*. As the O'Neill Report notes "[t]he Arena's existence thus depends on the construction deadline being met. The absolute requirement that there be no work interruption, disruption or stoppage on this Project makes a PLA more appropriate than in other settings where timely, uninterrupted completion is not as critical." R.R. at p. 297.

Thus, it was entirely within the discretion of the Authority to consider and take steps to assure the timely completion of the Project. Hence it cannot be disputed that the Authority's consideration and inclusion of the PLA which the O'Neill Report recommends being adopted so as to assure prompt and timely completion of the Project was not proper in the Authority's exercise of its discretion. Given the undisputed critical need for timely completion of the Project, the Authority acted fully within its discretion by including as a necessary component in its assessment of the "responsibility" of the lowest bidder, the ability to assure prompt completion of the Project and in furtherance of that goal to require bidders to agree to sign the PLA.

■ Notwithstanding the foregoing, the Appellants suggest that the Authority abused its discretion because the O'Neill Report

did not analyze the availability of alternative methods for avoiding work disruptions on job sites, absent a PLA. The Authority, like all other construction users in Pennsylvania, has available to it such alternatives as bonding requirements, performance clauses, separate entrance requirements enforceable by the National Labor Relations Board or court injunction. These measures have been effective in ensuring the peaceful and timely construction of thousands of projects in Pennsylvania . . . .

Appellants' reply brief at p. 5. However, this argument fails. To the extent it was necessary that the Authority consider all alternatives, given the presumption which cloaks the exercise of discretion by the Authority in the drawing up of bid specifications and the awarding of contracts, it is presumed that the Authority did in fact consider other alternatives to the PLA. *See, e.g., McIntosh Road Materials Co. v. Woolworth*, 365 Pa. 190, 211, 74 A.2d 384, 394 (1950)(public officials are presumed to follow the law). *Accord Snelling v. Department of Transportation*, 27 Pa. Cmwlth. 276, 366 A.2d 1298, 1304 (1976)("There is also a presumption that the actions of public officials are within the limits of their discretion."). And given that the burden is upon Appellants to show the Authority abused its discretion, it is incumbent upon Appellants to bring forth some evidence that the Authority did in fact fail to consider other alternatives. *McIntosh Road Materials*. The Appellants fail to point to where in this record such evidence exists, if any does. *See, e.g., McIntosh Road Materials Co. v. Woolworth*, 365 Pa. at 211, 74 A.2d at 394, wherein our Supreme Court held that

[i]n the absence of proof to the contrary, the law presumes that a public official's actions were pursuant to proper authority and that the antecedent steps necessary to give validity to his official acts were duly taken. In *Erie City v. Piece of Land*, 308 Pa. 454, 458, 162 A. 445, 446, it was said that "Public officers are presumed to have properly performed every duty and met every requirement necessary or essential to the validity of their official acts . . . ." This presumption is so strong that it is tantamount to presumptive proof of the antecedent acts necessary to sustain its validity. *Houseman v. International Navigation Co.*[, 214 Pa. 552, 64 A. 379 (1906) ]

(some citations omitted). Accordingly, Appellants have not met their burden to show that the trial court's denial of their summary judgment motion was in error.

■ Appellants' second argument is that the inclusion of the PLA specification unduly favors the award of government contracts to union contractors, again in violation of the competitive bid statute. Essentially, Appellants allege that the competitive bidding statute precludes public bodies from discriminating between union and nonunion contractors in the award of public projects, a proposition with which we agree. The discrimination alleged by the Appellants results from the fact that the PLA requirement "means that nonunion contractors, who are otherwise responsible bidders, cannot win an award of work on the affected project unless they agree drastically to restructure their methods of operations and employee relations." Appellants' brief at p. 8.

In this regard, we must agree with the trial court when it stated that contrary to Appellants' contentions,

[t]he PLA does not mandate the integration of local collective bargaining agreements, permits Plaintiffs [i.e., Appellants] to employ core [i.e. their own previously employed non-union] personnel in ranges of 20% to 50% of the Project's workforce, does not contain provisions requiring discrimination based on union affiliation, and opens the bidding process to all non-union and union contractors. Quite simply, that it may be difficult or distasteful for Plaintiffs to accept the provisions of the PLA does not mean it is anti-competitive.

Trial court slip op. at p. 16. Indeed, what the court stated in *Ohio ex rel. Associated Builders and Contractors v. Jefferson County Bd. of Commissioners*, 106 Ohio App.3d 176, 180–81, 665 N.E.2d 723, 726 (Ohio Ct.App.1995), *appeal not allowed*, 74 Ohio St.3d 1499, 659 N.E.2d 314 (1996), in upholding the PLA therein, applies with equal force here:

> [i]n the instant case, no person or entity was foreclosed from submitting a bid on the jail project. The PLA does not distinguish between entities employing union labor and those employing nonunion labor. It applies equally to all prospective bidders, with stated stipulations. Further, the PLA does not require any contractor to become a "union" employer. It simply requires any person or entity as a condition for being engaged to perform work on the project to agree to be bound by the same rules and restrictions as all others similarly engaged.

*Accord Utility Contractors Assoc. of New England, Inc. v. Commissioners of the Massachusetts Department of Public Works*, 1996 WL 106983 (Mass.Super.1996)(wherein the trial court held that the PLA "applies equally to union and non-union contractors; both may bid on the Project on the same terms. No contractor is favored under the Project Labor Agreement, although a non-union contractor is required to be bound by the same terms and conditions under which a union contractor already operates ….."). Hence, the mere inclusion of a PLA does not constitute illegal discrimination. Accordingly, this issue does not merit a reversal of the trial courts' denial of summary judgment to Appellants. Moreover, Appellants' argument about discrimination is not only legally incorrect but also factually unsupported by the record. The record shows that the bid for the dynamic compaction portion of the work· on the Project, the only record evidence of bidding pursuant to the terms and conditions of the PLA was awarded to a non-union contractor. R.R. at p. 464.

Appellants also rely upon *George Harms Construction Co. v. N.J. Turnpike Authority*, 137 N.J. 8, 644 A.2d 76 (1994) and *Tormee Construction Inc. v. Mercer County Improvement Authority*, 143 N.J. 143, 669 A.2d 1369 (1995) both of which struck down the PLAs at issue therein. We decline to follow *George Harms*, and *Tormee* because we find the reasoning therein unpersuasive. In upholding the PLA at issue herein, we find the reasoning of the Supreme Courts of Alaska and Nevada more persuasive. *See Associated Builders and Contractors, Inc. v. Southern Nevada Water Authority*, —— Nev. ——, 979 P.2d 224 (1999) and *Laborers Local No. 942 v. Lampkin*, 956 P.2d 422 (Alaska 1998). Appellants also rely upon *New York State Chapter, Inc., Associated General Contractors of America v. New York State Thruway Authority*, 88 N.Y.2d 56, 643 N.Y.S.2d 480, 666 N.E.2d 185 (1996). We also find that case not persuasive because therein the Court held that reviewing courts in cases involving PLAs must do more than just inquire whether the public officials abused their discretion and also that the burden is upon the public officials to show that their actions are reasonable, both of which requirements are contrary to the law in Pennsylvania as expounded above. The *New York State Chapter* Court held that in order to uphold a PLA "more than a rational basis must be shown. The public authority's decision to adopt such an agreement [i.e., a PLA] for a specific project must be supported by the record; the authority bears the burden of showing that the decision to enter into the PLA had as its purpose and likely effect the advancement of the interests embodied in the competitive bidding statutes." *New York State Chapter*, 88 N.Y.2d at 69, 643 N.Y.S.2d 480, 666 N.E.2d at 190. However, in Pennsylvania, reviewing courts only inquire whether public officials abused their discretion in setting forth the terms of a bid specification and awarding the contract, *Hibbs v. Arensberg* and the burden of proof rests upon the one challeng-

ing the public officials' exercise of discretion to adduce evidence of such abuse, *Wilson v. City of New Castle*, unlike New York where the burden of proof is upon the public official. *New York State Chapter*.

 Lastly, the Appellants argue that the Authority abused its discretion in adopting the PLA because the Authority obtained the O'Neill Report "purely for the sake of window dressing, trying to legitimize their long standing decision to use a union-only PLA for the project." Appellants' brief at p. 25. In support of this contention, Appellants point to some public remarks made by the Chairman of the Authority to the effect that he wants to obtain a report which is in favor of a PLA. The trial court herein essentially held that this evidence is irrelevant in light of the fact that the "PLA was approved by the vote of eleven members of Defendant's (i.e., the Authority) Board, not public statements of individual members of Defendant's Board." Trial court slip op. at p. 15. We agree that, in the absence of evidence presented to the trial court that the consultant hired to perform the PLA analysis was not credible or not competent, or in the absence of evidence that the report itself was fundamentally flawed and that the Authority's Board was on notice of such lack of competence in the consultant or of such flaws in the report, Appellants cannot establish that the Board abused its discretion in relying upon the O'Neill Report in adopting the PLA. As it was Appellant's burden to produce such evidence in attempting to merit a grant of summary judgment, the trial court did not err in denying Appellants' motion for summary judgment.

Accordingly, the order of the trial court denying Appellants' summary judgment motion is affirmed.[2]

2. In their brief and reply brief, Appellants' arguments all go to the issue of whether the trial court improperly denied Appellants' motion for summary judgment. The Appellants do not at all argue or assert that there is an issue of triable fact that would have precluded the trial court from entering summary judgment in favor of the Authority. Thus, we find the issue of whether the trial court properly granted summary judgment to the Authority to be waived.

*ORDER*

AND NOW, this 11th day of August, 1999, the order of the Court of Common Pleas of Luzerne County, docketed at No. 120–C of 1998 and dated June 1, 1998, is hereby affirmed.