**Roger SOSSONG, Appellant.**

v.

**SHALER AREA SCHOOL DISTRICT and Pittsburgh Regional Building Trade Council.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 2007.

Decided March 6, 2008.

Reargument Denied May 1, 2008.

Richard W. Saxe, Jr., Pittsburgh, for appellant.

Richard B. Tucker, III, Pittsburgh, for appellee, Shaler Area School District.

Joshua M. Bloom, Pittsburgh, for appellee, Pittsburgh Regional Building Trade Council.

BEFORE: McGINLEY, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Roger Sossong (Sossong) appeals from the April 25, 2007, and May 14, 2007, orders of the Court of Common Pleas of Allegheny County (trial court). The April 25, 2007, order, which was issued by The Honorable Timothy Patrick O'Reilly, denied Sossong's first motion for a preliminary injunction (First Motion) against the Shaler Area School District (School District). The May 14, 2007, order, which was issued by The Honorable Michael A. Della Vecchia, denied Sossong's request for a hearing on his second motion for a preliminary injunction (Second Motion) against the School District. We affirm.

On April 25, 2007, Sossong appeared before Judge O'Reilly with the First Motion against the School District. In the First Motion, Sossong alleged that: (1) in March, the School District sought bids for work on two school construction projects, (First Motion, ¶¶ 1–2, R.R. at 31a); (2) in the bid documents, the School District required all bidders, union or non-union, to enter into a Project Labor Agreement (PLA), (First Motion, ¶ 5, R.R. at 32a); (3) the terms of the PLA prevent non-union contractors from effectively bidding on the projects, such that the provision violates lowest responsible bidder laws, (First Motion, ¶¶ 6–8, R.R. at 32a); and (4) the School District would be awarding the contracts at a school board meeting later that same day, (First Motion, ¶ 11, R.R. at 32a). Sossong sought to preliminarily enjoin the School District from awarding the contracts. (R.R. at 33a–34a.)

Sossong attached to his First Motion a copy of a Complaint in Equity (Complaint) that he had filed with the trial court on April 24, 2007. The Complaint alleged that: (1) the School District decided to include the PLA requirement in its bid documents after the Pittsburgh Regional Building and Construction Trades Council (Trades Council) informed the School District that a PLA would ensure that the projects were completed on schedule and on budget, (Complaint, ¶¶ 19–20, R.R. at 41a); (2) the School District received only one or two bids from non-union contractors, (Complaint, ¶ 35, R.R. at 44a); (3) the PLA requirement deterred other non-union contractors from submitting bids, (Complaint, ¶ 37, R.R. at 44a); and (4) because competition for the contracts was significantly reduced, the cost of the pro-

jects will likely be greater,[1] (Complaint, ¶ 38, R.R. at 44a).

Sossong attached the PLA provision from the School District's bid documents to his Complaint as Exhibit A. The provision provides, in pertinent part, as follows:

> 1.1 The [School District] and the [Trades Council] have entered into a[PLA] in connection with all work to be performed on the District's anticipated construction contracts.... The [PLA] ... is designed to maintain labor/management harmony and, therefore, the expeditious **completion of the project on-time** and on-budget.
>
> 1.2 The [PLA] precludes strikes, lockouts, work stoppages and any other disruptions of the work for the duration of the project. All contractors, both union and non-union, must sign and be bound by the terms of the [PLA]. This mandatory requirement does not preclude any contractors, union or non-union, from bidding on and being awarded a contract.

(R.R. at 48a) (emphasis added).

Sossong attached the PLA, itself, to his Complaint as Exhibit B. (R.R. at 49a–63a.) Section 1.3(A)(1) of the PLA states that its intent is to "foster the achievement of a timely and on-budget completion" of the projects. (R.R. at 50a.) Section 1.2(B)(2) of the PLA states that the parties understand that "time is of the essence," and that it is "essential that construction work ... be done in an efficient, economical manner with optimum productivity and *no*

delays." (R.R. at 50a) (emphasis in original).

At the same time Sossong appeared with his First Motion before the trial court, the Trades Council appeared with a motion to intervene, which was granted. (R.R. at 69a.) Sossong, the School District and the Trades Council presented argument, after which Judge O'Reilly denied Sossong's First Motion. Judge O'Reilly explained his ruling in a subsequent opinion.

> At argument, I denied the [First] Motion, and I deemed a hearing thereon to be unnecessary in view of the circumstances then existing. In particular, the award of the contract was to be made that night by [the School District]. Obviously, this would have an adverse impact on the public interest. Further ... the relief sought was an Order voiding the [PLA], which would necessitate rebidding of the entire project, which would create further delay, and adversely impact the public interest. Finally, I said from the bench that I did not see that an equitable issue lay in the case, inasmuch as citizen [Sossong's] remedy was a surcharge action against [the School District's] Board Members, if the award under existing circumstances proved to be a waste of [the School District's] money.[2]

(Judge O'Reilly's op. at 4). Judge O'Reilly further stated that his decision is supported by *A. Pickett Construction, Inc. v. Luzerne County Convention Center Authority*, 738 A.2d 20 (Pa.Cmwlth.1999) (upholding the inclusion of a PLA require-

---

1. In his brief, Sossong states, "Although likely, whether the removal of the [PLA] requirement would definitely save the School District taxpayers money is unknown." (Sossong's brief at 22.)

2. In ruling that Sossong's remedy is a surcharge action, rather than an action in equity, Judge O'Reilly relied upon *Moscatiello v. South Hills Area Council of Governments*, 849 A.2d 319 (Pa.Cmwlth.2004). Because of our disposition in this case, we need not address whether Judge O'Reilly properly relied on *Moscatiello*.

ment in bidding documents),[3] and the fact that Sossong had notice of the PLA requirement at least from the time that the School District published the bid solicitation in March 2007. (Judge O'Reilly's op. at 5–6.) Finally, Judge O'Reilly noted that the School District's projects are subject to the Pennsylvania Prevailing Wage Act (Prevailing Wage Act);[4] thus, the likelihood that union workers would be paid more than non-union workers, resulting in a monetary loss to taxpayers, is extremely remote. (Judge O'Reilly's op. at 6.)

On May 9, 2007, Sossong filed an Amended Complaint and Second Motion at the same docket number and without leave of court. In the Amended Complaint, Sossong added averments that: (1) recognized the Trades Council as intervener; (2) challenged Judge O'Reilly's April 25, 2007, order; (3) questioned the applicability of *Pickett*; (4) recognized that the School District awarded the contracts on April 25, 2007; and (5) stated that the projects are scheduled to begin in June 2007. (Amended Complaint, ¶¶ 4, 9–11, 40–47, 65, 70.) In the Second Motion, Sossong argued that, unlike the government entity in *Pickett*, the School District included the PLA requirement in its bid documents without conducting a study. (Second Motion, ¶ 14, R.R. at 106a.) Sossong sought in his Second Motion to enjoin the beginning of work in June 2007.

The School District filed a response to Sossong's Second Motion, alleging that it did conduct a study, which included a review of a report entitled "Labor Analysis and Report on Feasibility for a Project Labor Agreement on the Construction Phases for the Baldwin High School" (Hill Report), prepared in September 2005 by Hill International for the Baldwin–Whitehall School District. The School District asserted that the Baldwin–Whitehall School District is a similarly sized public school district in the same labor market that was seeking to undertake a project of approximately the same size and scope as the projects here. (School District' Response, ¶ 14, R.R. at 147a.) The School District attached a copy of the Hill Report to its response. (R.R. at 156a–90a.) The Trades Council also filed a response to Sossong's Second Motion. (R.R. at 210a–27a.)

■■■ On May 14, 2007, Sossong appeared before Judge Della Vecchia with a request for a hearing on his Second Motion. Judge Della Vecchia denied the request because: (1) Sossong failed to follow proper procedures by filing his Amended Complaint without seeking leave of court; (2) Sossong simply wanted a "second bite at the apple"; and (3) the law of the case doctrine precludes Judge Della Vecchia from overruling Judge O'Reilly's decision.[5]

---

3. Judge O'Reilly also stated that his decision is supported by *Building and Construction Trades Council v. Associated Builders and Contractors*, 507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993), in which the United States Supreme Court held that federal labor law does not preempt a state governmental entity's PLA bid requirement.

4. Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165–1 to 165–17. Section 4 of the Prevailing Wage Act requires that a public body proposing a contract for a public work project incorporate prevailing minimum wages into the contract. 43 P.S. § 165–4.

5. The law of the case doctrine embodies the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court in the earlier phases of the matter. *National Railroad Passenger Corporation v. Fowler*, 788 A.2d 1053 (Pa.Cmwlth.2001). A departure from the law of the case doctrine is allowed only in exceptional circumstances, where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was

Sossong now appeals to this court.[6]

## I. First Motion

 Sossong first argues that Judge O'Reilly erred in denying Sossong's First Motion because he met the prerequisites for a preliminary injunction.[7] More specifically, Sossong argues that he established immediate and irreparable harm by proving that the PLA requirement violates the lowest responsible bidder laws. *See Shaeffer v. City of Lancaster*, 754 A.2d 719 (Pa.Cmwlth.2000) (stating that a statutory violation is sufficient to constitute irreparable harm). We disagree.

In *Pickett*,[8] this court was asked to consider whether the Luzerne County Convention Center Authority (Authority) violated the lowest responsible bidder laws by requiring the successful bidder for its Project to enter into a PLA. This court noted that: (1) the issue boils down to whether the PLA requirement relates to the "responsibility" of the bidders within the meaning of the lowest responsible bidder language; (2) the question of who is the

lowest responsible bidder is one for the sound discretion of the Authority; (3) the lowest responsible bidder is not necessarily the one whose bid on its face is the lowest in dollars; and (4) bidder "responsibility" includes financial responsibility, integrity, efficiency, industry, experience, **promptness** and the ability to successfully carry out the particular undertaking. This court held that, because the PLA requirement relates to the need for prompt completion of the Project, the Authority did not abuse its discretion by including such a requirement.

Given the undisputed critical need for timely completion of the Project, the Authority acted fully within its discretion by including as a necessary component in its assessment of the "responsibility" of the lowest bidder, the ability to assure **prompt** completion of the Project and in furtherance of that goal to require bidders to agree to sign the PLA. *Id.* at 24 (emphasis added).

In his Complaint, Sossong alleged that the School District included the PLA re-

---

clearly erroneous or would create a manifest injustice if followed. *Id.*

6. In reviewing a trial court order granting or denying a preliminary injunction, we will only interfere with the decision if it is clear that no apparently reasonable grounds exist to support it. *Quasti v. North Penn School District*, 907 A.2d 42 (Pa.Cmwlth.2006).

7. The prerequisites for a preliminary injunction are: (1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; (2) greater injury would result from refusing an injunction than from granting it, and the issuance of the injunction will not substantially harm other interested parties; (3) an injunction will properly restore the parties to their status as it existed prior to the alleged wrongful conduct; (4) the activity the petition seeks to restrain is actionable, the right to relief is clear, and success on the merits is likely; (5) the injunction is reasonably suited to abate the offending activity;

and (6) the injunction will not adversely affect the public interest. *Quasti.* The failure to establish any one of these prerequisites requires that a court deny the request for the injunction. *Id.*

8. Sossong argues that *Pickett* is inapplicable because it was decided prior to the effective date of section 3911(a) of the Commonwealth Procurement Code (Code), 62 Pa.C.S. § 3911(a), which requires that government agencies award contracts to the lowest responsible bidders. However, Sossong does not explain how "lowest responsible bidder" in section 3911(a) of the Code differs from "lowest responsible bidder" in *Pickett*. In *Pennsylvania Associated Builders and Contractors, Inc. v. Department of General Services*, 593 Pa. 580, 932 A.2d 1271 (2007), our supreme court noted that the lowest responsible bidder designation has been part of Pennsylvania law since 1885.

quirement after being informed that the requirement would ensure completion of the projects on schedule. Thus, it is undisputed that the School District was concerned about the prompt completion of the projects. Indeed, the bid documents state that the PLA is designed to ensure completion of the projects on time. The PLA, itself, provides that "time is of the essence" and requires that there be *no* delays. As in *Pickett,* because the PLA requirement is related to the need for prompt completion of the projects, the School District did not abuse its discretion by requiring that the lowest **responsible** bidder enter into the PLA.[9]

9. Sossong attempts to distinguish *Pickett* based on the fact that the Authority in *Pickett* relied on a consultant who recommended a PLA requirement after conducting a study. However, the consultant's PLA recommendation was not dispositive in *Pickett.* In fact, non-union contractors challenged the consultant's recommendation for failing to consider other alternatives to achieve the Authority's goals. They argued that the recommendation was mere window dressing to legitimize the Authority's decision to use a PLA. In rejecting the argument, this court stated:

> Public officers are presumed to have properly performed every duty and met every requirement necessary or essential to the validity of their official acts ... This presumption is so strong that it is tantamount to presumptive proof of the antecedent acts necessary to sustain its validity.

*Id.* at 25. As in *Pickett,* Judge O'Reilly was permitted to presume that the School District considered the matter sufficiently before including a PLA requirement in its bid documents.

10. The School District and Trades Council assert that Sossong never requested a hearing, and, thus, the issue is waived. We disagree.

In *Petro v. Kennedy Township Board of Commissioners,* 49 Pa.Cmwlth. 305, 411 A.2d 849 (1980), this court considered whether a trial court erred in failing to hold a hearing on an application for preliminary injunction. The appellants stated in their brief that they

## II. Evidentiary Hearing

 Sossong next argues that Judge O'Reilly abused his discretion in failing to hold an evidentiary hearing before denying the First Motion.[10] We disagree.

Although a hearing is preferred, there is no absolute duty on a court to grant an evidentiary hearing on an application for a preliminary injunction.[11] 5 Goodrich Amram 2d, § 1531(a):6 (1990). In determining whether a preliminary injunction should be granted and whether a hearing should be required, a court may act on the basis of the averments of the pleadings or petition. Pa. R.C.P. No. 1531(a). A court's decision concerning whether to

requested, but were denied, a hearing; however, the record contained no evidence indicating that such a request was made, and the trial court did not mention a hearing in its opinion. This court held that, where an appellate court cannot determine from the record whether a trial court erred in failing to hold a hearing, an appellate court will presume that there was no error. This court pointed out that the appellants could have petitioned the trial court to enlarge the record to contain evidence showing that they requested a hearing and that their request was denied. *Id.*

Here, the School District and the Trades Council are correct that the record contains no direct evidence that Sossong requested a hearing. However, in his Concise Statement of Matters Complained of on Appeal, Sossong asserted that Judge O'Reilly abused his discretion in denying Sossong's request for a hearing. (R.R. at 239a.) In addressing the matter, Judge O'Reilly did not state that Sossong failed to request a hearing; instead, he stated, "I deemed a hearing ... to be unnecessary in view of the circumstances then existing." (Judge O'Reilly's op. at 4.) Because we infer that Sossong requested a hearing, we shall consider whether Judge O'Reilly abused his discretion in failing to grant the request.

11. We note that no preliminary injunction can be continued, i.e., made permanent, without a hearing. 5 Goodrich Amram 2d, § 1531(a):6.

hold a hearing will be reversed only for an abuse of discretion. 5 Goodrich Amram 2d, § 1531(a):6 (1990).

As indicated above, a PLA requirement does not violate lowest responsible bidder laws where it is related to the need for prompt completion of a project, *Pickett*, and Sossong's First Motion and pleadings indicate that the School District was concerned about prompt completion of the projects.[12] Accordingly, Judge O'Reilly did not abuse his discretion in failing to hold a hearing in this case.

### III. Second Motion

Sossong argues that Judge Della Vecchia erred in relying on the law of the case doctrine with respect to his Second Motion because the Second Motion was based on his Amended Complaint, which contained "significant additional averments."[13] (Sossong's brief at 45.) However, Sossong does not identify which of the additional averments he considers significant, nor does he argue that any particular averments constitute exceptional circumstances to justify a departure from the law of the case doctrine. Thus, Sossong has waived the argument.[14] Pa. R.A.P. 2119(a) (requiring that arguments in a brief be followed by pertinent discussion); *Rapid Pallet v. Unemployment Compensation Board of Review*, 707 A.2d 636 (Pa. Cmwlth.1998) (stating that arguments not properly developed in a brief will be deemed waived).

Accordingly, we affirm.

### *ORDER*

AND NOW, this 6th day of March, 2008, the orders of the Court of Common Pleas of Allegheny County, dated April 25, 2007, and May 14, 2007, are affirmed.

12. We note that Sossong does not indicate what evidence he would have presented at a hearing to establish that the School District was **not** concerned about the prompt completion of the projects.

13. Although the trial court stated that Sossong failed to seek leave of court to file his Amended Complaint, Sossong asserts that the School District waived any argument in that regard by filing a response to the Amended Complaint. (*See* Sossong's brief at 9 n. 1) (*see also* Pa. R.C.P. No. 1033, stating that a party may amend a pleading by filed consent of the adverse party).

14. Even if we were to address the issue, to the extent Sossong suggests that Judge Della Vecchia should have departed from the law of the case doctrine because Judge O'Reilly's prior ruling was clearly erroneous, we disagree. In his Second Motion and Amended Complaint, Sossong once again attempted to distinguish *Pickett* by averring that the School

District did not rely on a detailed consultant's report to justify the PLA requirement. (Amended Complaint, ¶ 45, R.R. at 78a; Second Motion, ¶ 14, R.R. at 106a.) However, the School District denied this averment and attached the Hill Report to its response. Thus, Sossong obviously was mistaken about the School District's failure to rely on a detailed report.

Having been made aware of the Hill Report, Sossong argues that the Hill Report does not justify the School District's inclusion of a PLA requirement in its bid documents. However, the Hill Report specifically addresses how PLAs ensure prompt completion of school construction projects without delays, without academic schedule ramifications and without any impact on the education of children. (*See* R.R. at 182a.) It was not an abuse of discretion for the School District to apply the rationale set forth in the Hill Report to its own projects in order to ensure their completion without delays that could disrupt the education of children.