# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.D. Eckman, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 313 C.D. 2018 |
| | : | Argued: October 17, 2018 |
| Department of Transportation, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED:  January 11, 2019

At issue in this appeal is the Department of Transportation's (PennDOT) inclusion of a requirement in a bid solicitation for a highway construction project that the winning bidder execute a project labor agreement (PLA).  J.D. Eckman, Inc. (Eckman), a nonunion construction company, petitions for review of the order of the Secretary of Transportation dismissing its protest to the PLA requirement in the bid solicitation.  The Secretary held, *inter alia*, that the PLA did not violate Pennsylvania's competitive bidding laws.  For the following reasons, we reverse.

## Background

For some time, PennDOT has been making improvements to Markley Street, which is State Route 202 in Montgomery County (Markley Street Project).  Eckman won the bid for the first phase of the Markley Street Project and completed it a year ahead of schedule and on budget.  In August 2017, PennDOT issued a bid

solicitation for the second phase of the Markley Street Project. The solicitation provided that all contractors were required to sign a PLA with the Building and Construction Council of Philadelphia and Vicinity (Building and Construction Council), which represents 11 local unions identified in the PLA (Local Unions).[1] The PLA obligated bidding contractors to hire craft labor personnel through the Local Unions and to be bound by the Local Unions' collective bargaining agreements. In response, multiple contractors, both union and nonunion, filed taxpayer lawsuits, bid protests, and petitions for preliminary injunction. PennDOT withdrew its August bid solicitation.

On December 20, 2017, PennDOT issued another bid solicitation, which also required contractors to sign a PLA with the Building and Construction Council. The PLA again obligated contractors to hire through the Local Unions in accordance with the terms of their collective bargaining agreements. The December bid solicitation differed from the August bid solicitation in one key respect: the PLA provides that if the successful bidder already has a collective bargaining agreement with United Steelworkers, that bidder was not subject to the hiring requirements under the PLA and permitted to use its United Steelworkers workforce.[2]

Specifically, the PLA states in pertinent part:

---

[1] These Local Unions, representing various crafts, are Bricklayers & Allied Craft Workers #1, Carpenters Regional Council, Cement Masons Local #592, IBEW Local Union #98, Iron Workers Local Union #401, Iron Workers Local #405 (Rod Setters), International Union of Operating Engineers Local #542, Laborers District Council, Painters District Council #21, Plumbers Local #690, and Teamsters Local #107.

[2] On January 6, 2017, PennDOT submitted a request to the Federal Highway Administration seeking its approval to utilize a PLA on the Project. The Federal Highway Administration approved the request. Notably, the PLA approved was the one PennDOT used in its August bid solicitation, which did not contain the provision exempting United Steelworkers contractors from the hiring requirements under the PLA.

Article I: SOURCING RELIABLE CRAFT LABOR

***

[Section 3-E].  Unless otherwise specified in this Agreement, the Project Contractor shall be bound by the terms of the Local Union Collective Bargaining Agreements included as Appendix B hereto ("Local Agreements"), and any successor agreements or amendments thereto….

[Section 3-F]. All craft labor personnel employed on the Project, whether by the Project Contractor or other entities, shall be hired through the Local Unions identified in this Agreement, and in accordance with the hiring procedures of Local Agreements, included as Appendix B hereto.

[Section 3-G]. All Parties shall respect the sanctity of Local Agreements, which shall control wages, benefits, hiring procedures and other terms and conditions of employment, unless otherwise specified in this Agreement.

[Section 3-H]. In the event that a contractor bound by a Collective Bargaining Agreement (CBA) with the United Steelworkers (USW) is the successful bidder, the contractors will be permitted to utilize its USW workforce and its USW CBA[3] provided that the contractor adheres to the conditions and economic terms of the Agreement excluding any hiring hall obligations or union security provisions.  And provided further that the USW contractor is either a protected contractor, under the terms of the Harmony Agreement of February 24, 1994 or has been organized by USW pursuant to paragraph 3(b) of the Harmony Agreement for at least 120 days prior to the issuance of any bid specification for the Project and provided that it normally performs the type of work being let in the geographical area of the project.

***

---

[3] Although mentioned in the PLA, United Steelworkers' collective bargaining agreement is not included as an appendix to the PLA.

Article VI: CONFLICT AVOIDANCE PROCEDURES

Section 1: No Strikes-No Lock Outs.  The Parties recognize that the timely planning and execution of this Project is critical and, therefore, agree that there shall be no lock-outs by Project Owner or the Project Contractor.  The Unions agree that there will be no strikes or other work stoppages, provided that in the event a Local Union collective bargaining agreement expires during the course of this Project, the Project Contractor agrees to retroactive application of the terms of the new collective bargaining agreement entered between the affected Local Union and its signatory contractors.

Reproduced Record at 47a-48a; 52a (R.R. __) (emphasis omitted).  The PLA further states that "[t]ime is of the essence for the Project[,]" and "any qualified contractors may bid or perform work on this Project, regardless of whether or not they are affiliated with the [Building and Construction Council] or its Local Unions."  R.R. 45a-46a.

On December 27, 2017, Eckman filed a bid protest, requesting that PennDOT withdraw and reissue the bid solicitation without the PLA requirement. The bid protest challenged the PLA as discriminatory because it effectively precludes nonunion contractors from bidding and unduly favors contractors affiliated with United Steelworkers.  A report prepared for PennDOT by Keystone Research Center (Keystone Report) recommended the use of the PLA.  The bid protest challenged the Keystone Report as biased and flawed.  Further, the bid protest asserted that the use of the PLA violates Section 404.1 of the State Highway Law,[4] which requires PennDOT to qualify bidders using statutory criteria.  A bidder's union affiliation, or its willingness to sign a PLA, is not a qualifying factor under

_____

[4] Act of June 1, 1945, P.L. 1242, *as amended*, added by Section 1 of the Act of September 20, 1961, P.L. 1529, 36 P.S. §670-404.1.

4

Section 404.1 of the State Highway Law. Finally, the bid protest asserted that the use of the PLA violates Section 3 of the State Adverse Interest Act[5] and results in sole source procurement of labor not contemplated by Section 515 of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. §515.

PennDOT filed a response,[6] asserting that case law precedent has authorized the use of a PLA in bids for public construction projects. Because the PLA provides that "any qualified contractors may bid or perform work on this Project[]" regardless of their union affiliation or lack thereof, PennDOT contended that Eckman could bid on the Markley Street Project. R.R. 46a. PennDOT relied on the Keystone Report, which stated that a PLA is a useful way to address labor shortages. Further, PennDOT asserted that the PLA requirement does not violate the prequalification provisions set forth in the State Highway Law or the regulations; the Procurement Code; or the State Adverse Interest Act.

By a final determination dated February 26, 2018, the Secretary dismissed Eckman's bid protest.[7] Relying on this Court's decisions in *A. Pickett Construction, Inc. v. Luzerne County Convention Center Authority*, 738 A.2d 20 (Pa. Cmwlth. 1999); *Sossong v. Shaler Area School District*, 945 A.2d 788 (Pa. Cmwlth. 2008); and *Glenn O. Hawbaker, Inc. v. Department of General Services* (Pa. Cmwlth., No. 405 M.D. 2009, filed December 1, 2009) (unreported single judge opinion), the Secretary held that the PLA was not discriminatory because nonunion

---

[5] Act of July 19, 1957, P.L. 1017, *as amended*, 71 P.S. §776.3.

[6] In its response, PennDOT stated that "[g]iven the similar nature of the claims set forth in both protests, [it] incorporates and relies on its response to [Allan] Myers' protests[.]" R.R. 397a. *See Allan Myers, L.P. v. Department of Transportation*, ___ A.3d ___ (Pa. Cmwlth., No. 314 C.D. 2018, filed January 11, 2019).

[7] The Secretary incorporated the determination she made in Allan Myers' bid protest, "[g]iven the similar nature of the claims set forth in both protests[.]" Final Determination, 2/26/2018, at 1; R.R. 485a.

contractors are free to bid on the Markley Street Project. The Secretary concluded that the PLA does not favor United Steelworkers contractors because they are bound by the same terms and conditions of the PLA as all other contractors. PennDOT's use of the PLA in the bid solicitation is not arbitrary and capricious. The Secretary further rejected Eckman's assertions that PennDOT's imposition of the PLA requirement violates the prequalification provisions set forth in the State Highway Law; the competitive bidding requirements under the Procurement Code; and the State Adverse Interest Act. Eckman now petitions for this Court's review.[8]

On appeal, Eckman raises five issues for our consideration. First, it argues that PennDOT's use of the PLA violates Pennsylvania's competitive bidding laws because the three different classes of bidders, *i.e.*, union contractors, nonunion contractors, and United Steelworkers contractors, will not be placed on an equal footing with respect to their ability to compete for the work. Second, Eckman argues that PennDOT abused its discretion by relying on the Keystone Report to justify its use of the PLA because that report is biased and flawed. Third, Eckman argues that the PLA violates the State Highway Law and the corresponding regulations because it deprives PennDOT of the ability to qualify bidders in accordance with the criteria mandated by law. Fourth, Eckman asserts that the PLA is an "[i]llegal [s]ole [s]ource [c]ontract" privately negotiated between PennDOT and the Building and Construction Council, which violates the competitive bidding requirements in the

---

[8] This Court's review is governed by Section 1711.1(i) of the Procurement Code, which states:

> (i) Standard of review.--The court shall hear the appeal, without a jury, on the record of determination certified by the purchasing agency. The court shall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law.

62 Pa. C.S. §1711.1(i). *See also CenturyLink Public Communications, Inc. v. Department of Corrections*, 109 A.3d 820, 827 n.13 (Pa. Cmwlth. 2015).

Procurement Code. Eckman Brief at 51. Finally, Eckman argues that the Building and Construction Council violated the State Adverse Interest Act by acting as PennDOT's "advisors" and, thus, must be precluded from providing craft labor on the Project. Eckman Brief at 57.

The dispositive issues presented in this appeal are almost identical to those raised by Allan Myers in its separately docketed appeal of the Secretary's order. *Allan Myers, L.P. v. Department of Transportation*, ___ A.3d ___ (Pa. Cmwlth., No. 314 C.D. 2018, filed January 11, 2019). For the reasons set forth in this Court's opinion in *Allan Myers*, we reverse the Secretary's adjudication of February 26, 2018, and order the cancellation of PennDOT's solicitation.[9] Accordingly, we need not address the issues raised by Eckman that are distinct from those raised by Allan Myers.

_____
MARY HANNAH LEAVITT, President Judge

Judge Covey and Judge Fizzano Cannon did not participate in the decision in this case.

---

[9] Section 1711.1(j) of the Procurement Code states:

> (j) Remedy. -- If the determination is not affirmed, the court may enter any order authorized by 42 Pa. C.S. §706 (relating to disposition of appeals), provided that, if the court determines that the solicitation or award of a contract is contrary to law, then the remedy the court shall order is limited to canceling the solicitation or award and declaring void any resulting contract.

62 Pa. C.S. §1711.1(j).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.D. Eckman, Inc.,               :
          Petitioner       :
                          :
        v.                 :     No. 313 C.D. 2018
                          :
Department of Transportation,   :
          Respondent     :

## **O R D E R**

AND NOW, this 11th day of January, 2019, the order of the Secretary of Transportation, dated February 26, 2018, in the above-captioned matter, is hereby REVERSED, and the Department of Transportation's bid solicitation of December 20, 2017, is CANCELLED.

_____
MARY HANNAH LEAVITT, President Judge