## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Associated Builders and
Contractors, Inc., Eastern
Pennsylvania Chapter,

        Appellant

       v.

Bucks County Community
College

:
:
:
:
:
:
:
:
:
:
:

No. 1172 C.D. 2025
Argued: November 5, 2025


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE, Judge
             HONORABLE MATTHEW S. WOLF, Judge


OPINION BY
JUDGE COVEY                           FILED:  December 5, 2025


        Associated Builders and Contractors, Inc., Eastern Pennsylvania Chapter (ABC Eastern) appeals from the Bucks County Common Pleas Court's (trial court) order dated September 3, 2025 (docketed September 4, 2025): (1) vacating the trial court's order dated August 27, 2025 (docketed August 28, 2025) that directed Bucks County Community College (College) to not open bids for the construction of the Center for Advanced Technologies (CAT) Building heating, ventilation, and air conditioning (HVAC) Lab & Building Enhancement Project (Project) pending further trial court order; (2) denying ABC Eastern's request for preliminary injunction; and (3) releasing ABC Eastern's security.  The issue before this Court is whether the trial court erred by denying ABC Eastern's request for a preliminary injunction.  After extensive review, this Court reverses.

## Facts

On January 6, 2023, the College issued a Public Labor Agreement (PLA) that required the exclusive use of union workers hired through the union hiring hall, but permitted use of workers from any source if union workers were not available. The PLA also defined its scope to include *all* construction projects completed on College property that met or exceeded estimated construction costs of $500,000.00 during the next five years, or until December 31, 2028. The PLA enumerated goals such as the need to avoid costly delays of potential strikes, ensure reliable sources of skilled and experienced labor, and expedite the construction process.

On September 23, 2024, the United States Department of Energy (DOE) awarded a grant to the College (Grant), which the College was using to fund a portion of the development of the HVAC curriculum, and to hire instructors to run the program, but that the College would not use to pay for the costs of construction. According to the Grant's terms and conditions, the College was required to start the Project on July 1, 2025, and have it at least 50% completed by September 30, 2025. On July 24, 2025, the College issued an Invitation for Bids (IFB) for the Project. The IFB incorporated the PLA.

On August 23, 2025, five days before the bids were scheduled to open on August 28, 2025 (as per the IFB), ABC Eastern filed a complaint in the trial court seeking to preliminarily and permanently enjoin the College from proceeding with bid solicitation for the Project, and a declaratory judgment that the PLA was unlawful because it discriminated against nonunion workers and was implemented without extraordinary circumstances, in contravention of Pennsylvania case law. On August 25, 2025, ABC Eastern filed an emergency motion for preliminary injunction in the trial court.

On August 27, 2025, the trial court held a temporary restraining order (TRO) proceeding and, from the bench, issued a TRO of the Project's solicitation process until a fuller review of the matter could be conducted. That day, the trial court scheduled an evidentiary hearing on ABC Eastern's emergency motion for preliminary injunction for September 2, 2025. At the hearing, ABC Eastern presented testimony from its President and Chief Executive Officer Marissa Bankert, and Stephen Worth, the Principal of one of its members, Worth & Company. In response, the College presented its Chief Operating Officer Michael Harris and Vice President of Work Force and Strategic Partnerships Tracy Timby (Timby).

On September 3, 2025, the trial court vacated the TRO and denied ABC Eastern's emergency motion for preliminary injunction. On September 5, 2025, ABC Eastern sought an emergency stay in the trial court, in compliance with Pennsylvania Rule of Appellate Procedure 1732(a), which the trial court denied by September 9, 2025 order. On September 10, 2025, ABC Eastern filed an appeal from the trial court's September 3, 2025 order to this Court.[1]

On September 11, 2025, ABC Eastern filed an Emergency Application for Stay in the Nature of a Preliminary Injunction Pending Appeal (Emergency Application) in this Court, which the College opposed by September 15, 2025 Answer. Following oral argument, on September 22, 2025, this Court granted the

---

[1] [O]n an appeal from the grant or denial of a preliminary injunction, [this Court] do[es] not inquire into the merits of the controversy, but only examine[s] the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will [this Court] interfere with the decision of the [trial court].

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003) (quoting *Roberts v. Bd. of Dirs. of the Sch. Dist. of the City of Scranton*, 341 A.2d 475, 478 (Pa. 1975)).

Emergency Application, issuing a preliminary injunction of the Project's bid solicitation until resolution of the appeal from the trial court's order denying the preliminary injunction.[2]

## **Discussion**

Initially, in *SEIU Healthcare Pennsylvania v. Commonwealth*, 104 A.3d 495 (Pa. 2014), the Pennsylvania Supreme Court declared:

> The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and[] (6) the preliminary injunction will not adversely affect the public interest. [*See*] *Warehime v. Warehime*, . . . 860 A.2d 41, 46-47 ([Pa.] 2004) (citing *Summit Towne [Ctr.], Inc.[ v. Shoe Show of Rocky Mount, Inc.*], 828 A.2d [995,] 1001 [(Pa. 2003))].

*SEIU Healthcare*, 104 A.3d at 502.

> [This Court] . . . examine[s] the record to determine if there were any apparently reasonable grounds supporting the

---

[2] On November 3, 2025, the College filed a Motion for Leave to File an Amended Brief (Application), therein alleging that the attorney who wrote the initial brief notified the College's current counsel that the initial brief contained Artificial Intelligence-generated case citations and factual representations. By November 24, 2025 Order, this Court denied the Application and struck the initial brief. Accordingly, this Court did not consider the College's brief herein.

[trial court's] denial of the preliminary injunction. *Summit Towne* [*Ctr.*]*, Inc.*, 828 A.2d at 1000. [This Court] reiterate[s] that **"apparently reasonable grounds" exist** to support a [trial] court's denial of injunctive relief **where the [trial] court has *properly found* that any one of the six prerequisites for a preliminary injunction is not satisfied**. *Id*. at 1002. Because [ABC Eastern's] focus in this appeal is on whether [ABC Eastern] has a clear right to relief and is likely to prevail on the merits of the underlying action, [this Court] address[es] that prong first.

*SEIU Healthcare*, 104 A.3d at 506 (bold and italic emphasis added).

### Clear Right to Relief/Likely to Prevail on the Merits

"In the context of a motion for a preliminary injunction, only a substantial legal issue need be apparent for the moving party to prevail on the clear-right-to-relief prong." *Marcellus Shale Coal v. Dep't of Env't Prot.*, 185 A.3d 985, 995 (Pa. 2018). "This implicates a less deferential standard relative to the agency's interpretation of the governing statute than would be applicable to a trial court's final merits determination." *Id*.

ABC Eastern argues that a plain reading of the PLA makes clear it is not limited to the Project, but rather, the PLA blankets any and all on-site construction for the College and extends through December 31, 2028. ABC Eastern further contends that the PLA's terms do not provide for exceptions or exclusions, nor do they include any provisions calling for a case-by-case assessment of whether the PLA is appropriate for a particular project. Instead, ABC Eastern asserts, the PLA applies to all College construction projects, without discretion or consideration of whether there are extraordinary circumstances. ABC Eastern maintains that the PLA closes the door on nonunion contractors' ability to employ their own labor forces in favor of local unions with whom nonunion contractors do not have

5

relationships and whose skills they cannot accurately assess before bidding on public works projects.

ABC Eastern emphasizes that the PLA at issue here is a blanket <u>PLA which the College entered into in 2023 - *two years before the Project*</u> was commenced - and which *applies to virtually all construction projects at the College* through 2028; thus, the College did not, because it could not, take into consideration any aspect of this Project or other future projects when it signed the PLA. ABC Eastern argues, therefore, the College did not show extraordinary circumstances permitting the use of the PLA for the Project. ABC Eastern claims that the record is devoid of any credible evidence to demonstrate urgency, complexity or labor shortage giving rise to extraordinary circumstances warranting the imposition of a PLA. ABC Eastern contends that, with regard to the High Priority Occupation (HPO) List, a theoretical shortage of HVAC labor seven years from now does not constitute extraordinary circumstances warranting the imposition of a discriminatory PLA. ABC Eastern further proclaims that the College offered no credible evidence, apart from unsupported, speculative testimony, to support the trial court's holding that the College's funding from the Grant was actually at risk of being pulled. In addition, ABC Eastern asserts that the College did not present any evidence that future, theoretical grants from the federal government would be impacted by a preliminary injunction and removal of the PLA from the bid requirements.

The Pennsylvania Supreme Court has explained:

> Bidding requirements "are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public

6

interest." (Footnotes omitted.) 10 McQuillan, *Municipal Corporations* § 29.29, at 266-67 (3[]d ed. 1950).

*EZY Parks v. Larson*, 454 A.2d 928, 932 (Pa. 1982) (quoting *Yohe v. Lower Burrell*, 208 A.2d 847, 850 (Pa. 1965)). "When competitive bidding is used and the procedures followed emasculate the benefits of such bidding, judicial intervention is proper." *Id.* This Court has held: "The use of a PLA is permitted where the contracting agency can establish extraordinary circumstances[.]" *Allan Myers, L.P. v. Dep't of Transp.*, 202 A.3d 205, 215 (Pa. Cmwlth. 2019) (en banc). Extraordinary circumstances have been held to include: (1) the need for prompt completion of the project where used to reduce potential delays and inefficiencies, *see id.*; (2) where there is a labor shortage in the area, *see id.*; and (3) where the complexity of the project warrants its use. *See also Associated Builders & Contractors, Inc., Keystone Chapter v. Dep't of Gen. Servs.* (*ABC Keystone II*) (Pa. Cmwlth. No. 189 M.D. 2025, filed July 1, 2025) (single-Judge Opinion) (Covey, J.), slip op. at 39 ("that the Project is so urgent, complex, or that there are valid concerns regarding the availability of a qualified workforce, that a PLA is necessary").[3]

Here, contrary to the trial court's conclusion, the PLA clearly favors union contractors. The trial court focused on Article 4, Section 3 of the PLA entitled "Non-Discrimination in Referrals," which provides:

> The local Unions represent that their hiring halls and **referral systems will be operated in a non-discriminatory manner** and in full compliance with all applicable federal, state[,] and local laws and regulations, which require equal employment opportunities. Referrals shall not be affected in any way by the rules, regulations, bylaws, constitutional provisions[,] or any other aspects or obligations of union membership, policies[,] or requirements and shall be subject to such other conditions

---

[3] This unreported single-judge opinion is cited as persuasive authority pursuant to Section 414(a), (b) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), (b).

as are established in this Article. No employment applicant shall be discriminated against by any referral system or hiring hall because of the applicant's union membership, or lack thereof.

Reproduced Record (R.R.) at 136a (emphasis added). However, Article 4, Section 2 of the PLA entitled "Union Referral," mandates:

Hiring Procedures. The Contractor shall have the right to determine the required skills and competence of all employees, the right to determine the number of employees required and the sole responsibility for selecting the employees to be laid-off consistent with this [PLA] and regardless of membership or nonmembership in the Union(s). Subject to these rights, the **Contractor shall hire employees through the referral system(s)**, if any, **provided in the Collective Bargaining Agreements [(CBA)] of the appropriate Union(s)** set forth in Schedule A hereto. Any such referral system, whether by contract or practice, must be operated in full compliance with [f]ederal, state[,] and local laws and regulations that require equal employment opportunities and non-discrimination.

**In the event that a local Union is unable to fill any requests for qualified employees within a 48-hour period after such requisition is made by the Contractor** (Saturdays, Sundays[,] and holidays excepted), **the Contractor may employ qualified applicants from any other available source**. In the event that the local Union does not have a job referral system, the Contractor shall give the local Union first preference to refer applicants subject to the other provisions of this Article. The Contractor shall notify the local Union of craft employees hired within its jurisdiction from any source other than referral by the Union.

*Id*. (emphasis added). Significantly, no CBAs were attached to the PLA.

Moreover, the IFB mandated:

**PLA Requirements**

All Prime Contractors and Subcontractors shall comply with the mandatory and binding requirements of the

8

> Project's [PLA][.] Bidders are expected to familiarize themselves with these requirements (the full text of the PLA is attached to this document for reference). *Bidders that cannot fulfill these requirements should not submit a bid*. **Each contractor selected to perform work on the Project will be required to sign the PLA**.

R.R. at 101a (bold emphasis in original; italic emphasis added). Thus, notwithstanding that the referral system is operated in a non-discriminatory manner, and that contractors can hire their own employees *if* the Union does not refer employees within 48 hours, the fact that the contractors are forced to use the Union referral system in the first place clearly puts the non-union contractors at a disadvantage.

Further, and most significantly, the PLA states in no uncertain terms that it will apply to **all projects** on the College's premises **where the estimated costs are equal to or exceed $500,000.00** "**commenced prior to December 31**, **2028**." R.R. at 135a (PLA Art. 3 §1) (emphasis added); *see also* R.R. at 133a (Art. 2 §1). Moreover, it is undisputed that the study regarding the use of the PLA for the Project was completed **after** the PLA was issued and before the IFB was disseminated. Given that the PLA discriminates against nonunion contractors and PLAs are only permitted where "extraordinary circumstances" exist to justify their usage, *Allan Myers, L.P.*, 202 A.3d at 215, and here the PLA was issued **before** the study regarding use of the PLA for the Project was completed, ABC Eastern has presented a "substantial legal issue," *Marcellus Shale Coal*, 185 A.3d at 995, as to whether the PLA's use in this instance was permissible. Accordingly, ABC Eastern satisfied the fourth prerequisite to obtain a preliminary injunction.

The Dissent maintains that the Majority and this Court's precedents hold that using a PLA is an exception to an otherwise strict rule effectively precluding them. The Dissent disagrees with this holding. However, neither the Majority nor this Court's precedents so hold. As stated above, the *Allan Myers* Court

9

ruled: "**The use of a PLA is permitted where the contracting agency can establish extraordinary circumstances**[.]" *Allan Myers*, 202 A.3d at 215 (emphasis added). Here, the College issued the PLA **before the DOE awarded the College the Grant**, which was the impetus for the Project. The PLA defined its scope to include *all* construction projects completed on College property that met or exceeded estimated construction costs of $500,000.00 during the next five years, or until December 31, 2028, *see* R.R. at 133a, and enumerated goals such as **the need to** avoid costly delays of potential strikes, ensure reliable sources of skilled and experienced labor, and **expedite the construction process**. *See* R.R. at 132a. Thus, because the PLA was in place before the College conceived the Project, there is a substantial question as to whether extraordinary circumstances truly existed to warrant the PLA.

The lack of extraordinary circumstances in this case is especially suspect because the urgency the College claims as the reason for supporting the need for the PLA appears to be of its own doing. To accept that reasoning in this case would encourage such action in the future. For example, if an entity wishes to use exigency as a reason for using a PLA, it could delay a project until it was indeed urgent and claim extraordinary circumstances. Because the PLA included expediting the construction process as a reason for the PLA before the Project was born, ABC Eastern has clearly presented a substantial legal issue as to whether extraordinary circumstances existed to permit the College's use of the PLA in this instance.[4]

---

[4] The Dissent counters that the College commissioned a study concerning the need for a PLA, determined that a PLA was appropriate given the urgency of the Project, and utilized a PLA which it found satisfactory to address the need for it. However, the trial court sustained ABC Eastern's objection to the study, i.e., the Keystone Report, as it was inadmissible hearsay. *See* Notes of Testimony, Sept. 2, 2025, at 112-113. Further, Timby testified that the College made the decision to include the PLA for the Project *before* the Keystone Report's preparation. *See id.* at

10

## Immediate and Irreparable Harm

The Pennsylvania Supreme Court has declared: "When the [l]egislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury." *Pa. Pub. Util. Comm'n v. Israel*, 52 A.2d 317, 321 (Pa. 1947); *see also Philips Bros. Elec. Contractors, Inc. v. Valley Forge Sewer Auth.*, 999 A.2d 652 (Pa. Cmwlth. 2010).

ABC Eastern argues that the PLA in question violates the Commonwealth's competitive bidding laws. ABC Eastern contends that, as the trial court noted, "a violation of competitive bidding laws would be a substantial injury." Trial Ct. Op. at 14. ABC Eastern emphasizes that the Pennsylvania Supreme Court has held that "to continue . . . unlawful conduct constitutes irreparable injury[,]" and "[s]preading unlawful conduct is irreparable injury of the most serious nature[.]" *Israel*, 52 A.2d at 321.

Indeed, our Supreme Court has declared that "case law hold[s] that where the offending conduct sought to be restrained through a preliminary injunction violates a statutory mandate, irreparable injury will have been established." *SEIU Healthcare*, 104 A.3d at 508. Because ABC Eastern raised a substantial issue as to whether the College's use of the PLA violates competitive bidding laws, irreparable

---

115. Thus, the Dissent's reliance on said study to substantiate extraordinary circumstances is unsupported by the record evidence.

In addition, the Dissent states that *if* ABC Eastern's burden on this prong is simply to demonstrate that substantial legal questions exist, ABC Eastern may only have done so because this Court began deviating from its own precedent in *Allan Myers*. However, as stated above, this Court continues to follow *Allan Myers*, as the Majority has in the instant case. Further, the Pennsylvania Supreme Court has instructed: "In the context of a motion for a preliminary injunction, **only a substantial legal issue need be apparent for the moving party to prevail** on the clear-right-to-relief prong." *Marcellus Shale*, 185 A.3d at 995 (emphasis added). Thus, there is no question that ABC Eastern met its burden in accordance with *Marcellus Shale* and *Allan Myers*.

harm per se was established. *See SEIU Healthcare*; *Wolk v. Sch. Dist. of Lower Merion*, 228 A.3d 595 (Pa. Cmwlth. 2020). Further, since absent a preliminary injunction, the College intended to continue the bidding process (i.e., the College opened bids for the Project on September 5, 2025; posted bids to PennLive on September 11, 2025; and issued letters of intent to three contractors on September 15, 2025), ABC Eastern's harm was immediate. Accordingly, ABC Eastern satisfied the first prerequisite to obtain a preliminary injunction.

**Greater Injury/Substantial Harm**

The second preliminary injunction prerequisite requires this Court to "examine whether [ABC Eastern] has demonstrated that 'greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings.'" *SEIU Healthcare*, 104 A.3d at 509 (quoting *Summit Towne Ctr., Inc.*, 828 A.2d at 1001).

ABC Eastern asserts that the trial court erred by holding that ABC Eastern failed to demonstrate that greater injury would result from refusing the injunction than by granting it, because an injunction would likely result in the Project not meeting its Grant deadlines,[5] and the HVAC Training Program would be

---

[5] The trial court explained:

> [U]nder the Grant, the Project must be complete and ready for students by March 30, 2026, so that the first cohort of students can start in the HVAC Training Program in April 2026. . . . [T]his $2,000,000[.00.] Grant is the largest federal grant the College has received . . . , and that failure to meet the Grant timetable will not only deprive the College of these Grant funds but will also likely impact the College's ability to receive future federal grants.

Trial Ct. Op. at 5 (internal record citations omitted).

delayed.[6]  *See* Trial Ct. Op. at 12-13.  ABC Eastern contends that the College provided only speculative testimony that the Grant would be in jeopardy if an injunction were granted.  ABC Eastern further maintains that the College's own witnesses admitted at the preliminary injunction hearing that the IFB could be reissued within a week, and it afforded the College a 60-day window to award the bid.  ABC Eastern claims that, pursuant to the plain language of the Grant's terms and conditions, the College was required to achieve 50% completion of the Project by September 30, 2025; however, the College had not yet even begun construction. Therefore, ABC Eastern proclaims that the College has willingly missed deadlines set forth within the Grant, without the consequences its witnesses speculated could occur.  Thus, ABC Eastern maintains that greater injury would result in rejecting the preliminary injunction than in granting it; and denying the preliminary injunction would permit the College to award the contracts, thus, harming ABC Eastern's nonunion contractor members and Pennsylvania taxpayers.

> Here, the trial court concluded:

> [A]n injunction which puts the Project on hold during the course of this litigation would likely result in the Project not meeting its deadlines under the . . . Grant.  As a result, the College would lose a two million dollar ($2,000,000[.00]) federal grant and would risk the loss of future federal grants.  Further, the HVAC Training Program would be delayed, with resultant harm to the

---

[6] The trial court expounded:

> The HVAC Training Program itself is also time-sensitive, beyond the time-sensitivity of the Grant funding. . . .  [T]he [HPO L]ist for Bucks County has identified a compelling need for the new HVAC workers that the [HVAC Training] Program will train.  Indeed, the Bucks County HPO [List] identified a significant shortage of labor in HVAC and anticipated a need for 1,300 HVAC workers in [Bucks C]ounty for 2032.

Trial Ct. Op. at 5 (internal record citations omitted).

trainees, their potential employers, and the community's significant need for additional trained HVAC technicians.

Trial Ct. Op. at 15. However, while the potential harm to the College may be concerning, "[t]he argument that a violation of law can be a benefit to the public is without merit." *Israel*, 52 A.2d at 321.

Moreover, here, the harm to the College is self-inflicted. The Grant was awarded on September 23, 2024, and according to its terms and conditions, the College was required to start the Project on July 1, 2025, and have it at least 50% completed by September 30, 2025. However, the College did not even solicit bids until *after* the date it was to begin construction on the Project. Given this Court's conclusion that there is a substantial issue as to whether the PLA was permitted and, thus, bidding laws were potentially violated, ABC Eastern has demonstrated that greater injury would result from refusing an injunction than from granting it and that issuance of an injunction will not substantially harm other interested parties in the proceedings. Accordingly, ABC Eastern satisfied the second prerequisite to obtain a preliminary injunction.[7]

## Status Quo

To satisfy the status quo requirement, "the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct." *Summit Towne Ctr.*, 828 A.2d at 1001. "Courts have defined the term 'status quo []' as 'the last peaceable and

---

[7] The Dissent would rule that the Project's time sensitivity and the attendant risks for failing to comply with the terms of the Grant outweigh any alleged harm to ABC Eastern. However, as stated above, it is well-settled law that "a violation of law can[not] be a benefit to the public[.]" *Israel*, 52 A.2d at 321. Because there is a substantial question as to whether the College's use of the PLA was permitted, this Court cannot find that any harm to the College outweighs any risk to the public.

lawful uncontested status preceding the underlying controversy.'" *Hatfield Twp. v. Lexon Ins. Co.*, 15 A.3d 547, 555 (Pa. Cmwlth. 2011) (quoting *In Re Milton Hershey Sch. Tr.*, 807 A.2d 324, 333 (Pa. Cmwlth. 2002)).

ABC Eastern argues that the injunctive relief sought would maintain the status quo. ABC Eastern contends that halting the procurement process now - at a point when no contracts have been executed, no work has begun, and it is still possible for the College to cancel this procurement and re-issue an RFP - if this Court ultimately finds in ABC Eastern's favor - would maintain the status quo while the trial court reviews the ultimate merits of ABC Eastern's case and prevents irreparable injury or gross injustice.

Although the College maintains that, in defiance of the trial court's order, it has submitted letters of intent to several contractors regarding the Project and will be placed further behind schedule on their construction plans if the preliminary injunction is granted, halting the procurement process now - at a point when no contracts have been executed, no work has begun, and it is still possible for the College to cancel this procurement and re-issue an IFP if this Court ultimately finds in ABC's favor - would, at least, maintain the current status quo pending this Court's review of the merits of ABC Eastern's case. Accordingly, ABC Eastern has satisfied the third prerequisite.

**Abate Offending Activity**

To satisfy the abatement prerequisite, "the party must show that the injunction it seeks is reasonably suited to abate the offending activity." *Summit Towne Ctr.*, 828 A.2d at 1001.

ABC Eastern argues that the offending activity is the College's inclusion of a discriminatory PLA in its IFB without necessary extraordinary circumstances warranting the same. ABC Eastern contends that granting a

15

preliminary injunction pending the trial court's determination on the merits is reasonably suited to ensure that contracts are not awarded under the current IFB, which includes the discriminatory PLA.

When there is a bid protest, "if the court determines that the solicitation or award of a contract is contrary to law, then the remedy the court shall order is limited to canceling the solicitation or award and declaring void any resulting contract." Section 1711.1(j) of the Commonwealth Procurement Code, 62 Pa.C.S. § 1711.1(j). Given the offending activity here is the use of a PLA which violates the Commonwealth's competitive bidding laws, then granting a preliminary injunction pending the trial court's determination on the merits is reasonably suited to ensure contracts are not awarded under the current IFB, which includes the discriminatory PLA. Accordingly, ABC Eastern has satisfied the fifth prerequisite.

**Public Interest**

To satisfy the public interest prerequisite, "the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest." *Summit Towne Ctr.*, 828 A.2d at 1001.

ABC Eastern argues that the public interest would be protected if a preliminary injunction is entered because it will restrain the College from awarding contracts during the pendency of litigation and, in turn, protect the integrity of the public bidding process.

The Pennsylvania Supreme Court has long held that **competitive bidding** requirements "**guard against favoritism**, **improvidence**, extravagance, fraud[,] and corruption in the awarding of . . . contracts . . . **and are enacted for the benefit of property holders and taxpayers**, and not for the benefit or enrichment of bidders[.]" *Yohe*, 208 A.2d at 850 (quotation marks omitted) (emphasis added). Clearly a preliminary injunction enjoining the use of a discriminatory PLA would

16

not adversely affect the public interest.  Accordingly, ABC Eastern has satisfied the sixth and final prerequisite.

## Reasonable Grounds

> [This Court] conclude[s] that [ABC Eastern] satisfied the stringent criteria for the grant of a preliminary injunction, and can identify no reasonable ground for the denial of interim relief.  Thus, the [trial court's] denial of the request for injunctive relief is reversed and [this Court] issue[s] a preliminary injunction, instructing the [College to not open bids for the construction of the Project, until the merits of ABC Eastern's action have been ruled upon].

*SEIU Healthcare*, 104 A.3d at 509-10.

## <u>Conclusion</u>

For all of the above reasons, the trial court's order is reversed, and a preliminary injunction is entered prohibiting the College from opening bids or taking other action for the construction of the Project, until the trial court decides the merits of ABC Eastern's action.

_____
ANNE E. COVEY, Judge

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Associated Builders and     :
Contractors, Inc., Eastern     :
Pennsylvania Chapter,     :
           Appellant     :
    :
      v.     :
    :
Bucks County Community     :    No. 1172 C.D. 2025
College     :

## O R D E R

AND NOW, this 5th day of December, 2025, the Bucks County Common Pleas Court's (trial court) order dated September 3, 2025 (docketed September 4, 2025) is REVERSED.

FURTHER, a PRELIMINARY INJUNCTION IS ENTERED prohibiting Bucks County Community College from opening bids or taking further action for the construction of the Center for Advanced Technologies Building heating, ventilation, and air conditioning Lab & Building Enhancement Project until the trial court rules upon the merits of Associated Builders and Contractors, Inc., Eastern Pennsylvania Chapter's (ABC Eastern) action.

ABC Eastern shall deposit with the trial court's Prothonotary $1,000.00 as security, in accordance with Rule 1531(b) of the Pennsylvania Rules of Civil Procedure.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Associated Builders and Contractors, Inc., Eastern Pennsylvania Chapter, | : : : : | |
| Appellant | : : | |
| v. | : : | No. 1172 C.D. 2025 Argued: November 5, 2025 |
| Bucks County Community College | : : : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

DISSENTING OPINION
BY JUDGE WOJCIK              FILED:  December 5, 2025

I do not share this Court's ever-growing conviction that the use of a PLA[1] violates the Commonwealth's competitive bidding requirements or that their use is an exception to an otherwise strict rule effectively precluding them. In fact, I believe that a faithful reading of our precedent indicates the opposite. This, in tandem with my concern that the College will suffer greater harm from the grant of the preliminary injunction than from its refusal, leads me to respectfully dissent from the Majority's well-written Opinion.

---

[1] For ease of discussion, I will incorporate the Majority's definitions as my own. For example, here, a project labor agreement will be referred to as a PLA. "A PLA is an agreement between a government authority and a collection of unions represented by a council (often a construction trades council) which applies to parts of a construction project. The terms of PLAs vary according to the terms negotiated in each agreement." *A. Pickett Construction, Inc. v. Luzerne County*, 738 A.2d 20, 21-22 (Pa. Cmwlth. 1999).

At the outset, I remain mindful that appellate courts may only review a trial court order refusing a preliminary injunction for an abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). Here, we may "not inquire into the merits of the controversy, but [may] only examine[] the record to determine 'if there were any apparently reasonable grounds for the action of the court below.'" *SEIU Healthcare Pennsylvania v. Commonwealth*, 104 A.3d 495, 501 (Pa. 2014) (quoting *Roberts v. Board of Directors of School District of City of Scranton*, 341 A.2d 475, 478 (Pa. 1975)). "'Apparently reasonable grounds' exists to support a lower court's denial of preliminary injunctive relief where the lower court has properly found that any one of the 'six essential prerequisites' for a preliminary injunction is not satisfied." *Id*.

Preliminary injunctive relief is warranted when the moving party establishes six prerequisites:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it; and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare*, 104 A.3d at 502 (Pa. 2014).

Presently, I find our review of the trial court's denial of ABC Eastern's request for a preliminary injunction a bit more awkward or challenging than usual.[2] "A preliminary injunction is designed to preserve the subject of the controversy in the condition in which it is when the order is made[;] it is not to subvert, but to maintain the existing status quo until the legality of the challenged conduct can be determined on the merits." *Greater Nanticoke Area Education Association v. Greater Nanticoke Area School District*, 938 A.2d 1177, 1183 (Pa. Cmwlth. 2007). As Justice Wecht recounted in his dissenting opinion in *Weeks v. Department of Human Services*, the law concerning preliminary injunctions has oscillated between a more demanding showing of a movant's clear right to relief and "a standard more harmonious with the idea that preliminary injunction proceedings should not become an arena to decide the underlying challenge." 222 A.3d 722, 738 (Pa. 2019) (Wecht, J., dissenting). Herein lies the tension with our review now: while we are admonished to maintain the status quo and to refrain from turning this preliminary injunction proceeding into a final merits determination, the exigency of the Project means that this decision may very well be the dispositive ruling on the underlying challenge.

---

[2] As our Supreme Court has explained:

> It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony; hence our almost invariable rule is to affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law and equity.

*Hicks v. American Natural Gas Co.*, 57 A. 55, 55-56 (Pa. 1904).

MHW-3

With that in mind, as it concerns the clear right to relief prong, I am less convinced of ABC Eastern's arguments than the Majority. In *A. Pickett Construction, Inc. v. Luzerne County Convention Center Authority*, 738 A.2d 20, 21-22 (Pa. Cmwlth. 1999), a county authority adopted a PLA for the construction of a new arena-convention center and required bidders to sign the PLA as a requirement of the bid solicitation. The PLA also required that the awardee agree to employ a certain number of union workers notwithstanding the awardee's own union status. *Id*. Critically, the project carried an "inflexible deadline" because of state funding requirements and because the anchor tenant (a hockey team) required use of the arena. *Id*. at 22.

A non-union contractor challenged the inclusion of the PLA, in part, on the basis that the PLA favored union contractors and prevented non-union contractors from bidding because the required inclusion of union workers necessitated "drastic revisions in their working relationships . . . ." *Pickett*, 738 A.2d at 25. On appeal, this Court agreed that our "competitive bidding statute precludes public bodies from discriminating between union and non[-]union contractors in the award of public contracts . . . ." *Id*. But this Court concluded that the PLA therein did not in fact favor union contractors: "Quite simply, that it may be difficult or distasteful for [non-union contractors] to accept the provisions of the PLA does not mean it is anti-competitive." *Id*. Importantly, we also noted that the "undisputed critical need for timely completion of the [p]roject" conferred the discretion upon the County authority to enter the PLA. *Id*. at 24.

Nine years later, in *Sossong v. Shaler Area School District*, 945 A.2d 788, 790 (Pa. Cmwlth. 2008), a school district sought bids for work on two separate construction projects which required all bidders, regardless of union-affiliation, to

enter a PLA. An individual contractor sought a preliminary injunction, challenging the PLA requirement on the basis that it favored union contractors and frustrated the "lowest responsible bidder" requirement under our competitive bidding laws. *Id*. at 791-93. The trial court denied and this Court affirmed. In pertinent part, relying on *Pickett*, we observed it was once again undisputed that the construction project required prompt completion for student use – the PLA identified that the project had to be completed without delay – such that the school district "did not abuse its discretion by requiring that the lowest responsible bidder enter into the PLA." *Id*. at 794.

In *Glenn O. Hawbaker, Inc. v. Department of General Services* (Pa. Cmwlth., No. 405 M.D. 2009, filed December 1, 2009) (Pellegrini, J.) (single-judge op.),[3] the Department of General Services required the winning bidder for the design and construction of a 4,100-bed prison at the State Correctional Institution at Graterford to execute a PLA. The PLA mandated the integration of local CBAs; required craft employees to join and be hired through union hiring halls; did not permit contractors to hire non-union personnel; but permitted bidding from all non-union and union contractors. The PLA also identified that the project was costly (roughly $15 million) and complex, and that the PLA was necessary "to maintain an expedited and uninterrupted construction schedule to ensure completion and occupancy on or before the construction deadline." Slip op. at 5. A true exigent circumstance also existed: the overpopulation of the prison was becoming an emergency situation. *Id*. at 29. A number of contractors sought a preliminary injunction in this Court's original jurisdiction under the theory that the PLA

---

[3] "Except as provided in subsection (d) (relating to single-Judge opinions in election law matters), a single-Judge opinion of this Court, even if reported, shall be cited only for its persuasive value and not as binding precedent." 210 Pa. Code §69.414(b).

"unlawfully discriminate[d] against non-union contractors and employees, because, among other things, the contractors, [were] not guaranteed that they [would] be able to use only their employees, lessening their ability to compete." *Id*. at 7.

Judge Pellegrini recognized that there was very little Pennsylvania case law on the question of whether a public body could mandate the use of only union or non-union labor, finding a single Superior Court decision indicating that such discrimination was illegal. *Hawbaker*, slip op. at 14-15 (citing *Daniel B. VanCampen Corporation v. Building and Construction Trades Council of Philadelphia and Vicinity*, 195 A.2d 134 (Pa. Super. 1963)). Still, Judge Pellegrini expressed "great doubts that the provisions of the SCI-Graterford PLA had taken the case 'over the line' and resulted in illegal discrimination.'" *Id*. at 15. Rather, after surveying the PLAs at issue in *Pickett* and *Sossong*, Judge Pellegrini found many common elements between the respective PLAs and concluded "[b]ased on the approval of the past PLAs, especially in *Sossong*, I cannot say that all PLAs or this one are illegal." *Id*. at 15-17

More recently, in *Allan Myers, L.P. v. Department of Transportation*, 202 A.3d 205, 207-08 (Pa. Cmwlth. 2019),[4] albeit on a different procedural posture, this Court considered whether the Secretary of Transportation properly dismissed a non-union contractor's bid protest. The protest complained that a Department of Transportation's bid solicitation was anti-competitive because it required the awardee to sign a PLA. The PLA therein stated that time was of the essence, but, more importantly, required all union and non-union contractors to hire through the unions that were party to the PLA, with one exception: if the contractor was a United Steelworker (USW) contractor then it could use its USW workforce. *Id*. at 209.

_____

[4] *See also J.D. Eckman v. Department of Transportation*, 202 A.3d 832 (Pa. Cmwlth. 2019) (*Allan Myer* companion case).

MHW-6

Upon review, and relying on *Pickett*, *Sossong*, and *Hawbaker*, we reversed, reasoning that the pertinent PLA was discriminatory. In our view, the PLA clearly favored USW contractors. But it also favored union contractors more broadly. We explained that "[u]nlike contractors affiliated with the [l]ocal [u]nions or [USW], a non[-]union contractor that bid[] on . . . [the project could not] use its own experienced workforce." *Allan Myers*, 202 A.3d at 214. By requiring bidders to abide by the PLA, this Court determined that the Department had "effectively precluded" non-union contractors from bidding as the non-union contractor could not seriously put forth a bid with an "unknown workforce." *Id*. at 215. Further, this Court observed that no extraordinary circumstance warranted the PLA. Unlike *Pickett*, which required prompt completion to obtain state funding and to keep its anchor tenant, and unlike *Sossong*, in which the project required prompt completion for the upcoming school year, the project at issue (a long-term road improvement project) was not actually urgent. *Id*.

In my view, we must not read *Allan Myers* overbroadly or countenance a change to our precedent which relegates *Pickett*, *Sossong*, and *Hawbaker* as exceptions to a general rule against PLAs. *See Associated Builders and Contractors, Inc., Keystone Chapter v. Department of General Services* (Pa. Cmwlth., No. 30 M.D. 2023, filed February 27, 2023) (Wojcik, J.) (single-judge op.) (*ABC Keystone I*) ("The Court does not read *Allan Myers* so broadly as to declare that all PLAs are impermissible, and the Court disagrees with Petitioners' stance that *Pickett*, *Sossong* and *Hawbaker* are exceptions to a general rule."); *but cf. Associated Builders and Contractors, Inc., Keystone Chapter v. Department of General Services* (Pa. Cmwlth., No. 189 M.D. 2025, filed July 1, 2025) (Covey, J.) (single-judge op.) (*ABC Keystone II*). In fact, I believe that *Allan Myers* suffers from a great irony: it relies

on *Pickett*, *Sossong*, and *Hawbaker* in reaching its conclusion but none of those respective PLAs could have survived *Allan Myers'* scrutiny concerning discrimination.

For example, if we accept *Allan Myers'* proposition that a non-union contractor's inability to use its own workforce for the completion of a public body's project is discriminatory under the Commonwealth's competitive bidding requirements, how could we have approved *Pickett*'s mandate of employing a certain number of union employees? How could we have approved *Sossong* and *Hawbaker*'s PLAs which, as here, also required the winning bidder to sign a PLA integrating union CBAs and required the use of union hiring halls? How could we approve any PLA given that such a stipulation is a rather common characteristic? *See Hawbaker*, slip op. at 4 (quoting *Associated Builders and Contractors, Inc. v. Southern Nevada Water Authority*, 979 P.2d 224, 226 (Nev. 1999) ("Under PLAs, '[t]he union is designated the collective bargaining representative for all employees on the project and agrees that no labor strikes or disputes will disrupt the project. The contractor must abide by certain union conditions, such as hiring through union halls and complying with union wage rules.")).[5]

I do not believe that engaging in an after-the-fact analysis of the required extraordinary circumstances provides the answer or otherwise harmonizes our case law on this point. In other words, while the trial court read *Allan Myers* as tolerating a discriminatory PLA where an extraordinary circumstance justified the discrimination, *see* Trial Court's Op. at 11-12, I do not read *Allan Myers* as establishing an analytical framework by which we first assess whether the PLA is discriminatory and then assess whether extraordinary circumstances permit the PLA

---

[5] *See also* 51A Corpus Juris Secundum (C.J.S.) Labor Relations §316 (May 2025) (same).

anyway.[6]  Read strictly, the Court's discussion distinguishing *Pickett* and *Sossong* was primarily for the purpose of rejecting PennDOT's arguments.  *Allan Myers*, 202 A.3d at 214.  If anything, the *Allan Myers* Court found any discrimination or differing bidding standards to be *intolerable*.  *See id.* at 215-16 ("[W]e need not consider whether PennDOT acted in good faith in revising the PLA . . . This is because courts will not authorize a bid with 'a clear potential to become a means of favoritism, regardless of the fact that the . . . officials may have acted in good faith in the particular case.'  PennDOT's good faith, or lack thereof, is irrelevant because the PLA places [USW] contractors in a favored position.") (internal citation omitted).

I would consequently summarize this Court's precedent as follows. Public bodies retain a great deal of discretion in developing specifications for bid solicitations, requests for proposals, or the award of contracts generally. Extraordinary circumstances, like the need for prompt completion of the project, *inter alia*, routinely warrant the use of a PLA.  *Pickett*, 738 A.2d at 24; *Sossong*, 945 A.2d at 791; *Hawbaker*, slip op. at  29.  However, the proffered extraordinary circumstance must be genuine; this Court will set aside PLAs that nominally, but disingenuously, claim an extraordinary circumstance by way of "lip service" or "boilerplate language."  *Allan Myers*, 202 A.3d at 215.  Finally, while the public body may not discriminate on the basis of union affiliation, "the mere inclusion of a

---

[6] Even if *Allan Myers* may read that way at first blush, to date, the issue of whether a discriminatory PLA is justified by extraordinary circumstances has never manifested.  In other words, where we have found that extraordinary circumstances warranted a PLA, we have found that the PLA was not discriminatory.  *See Pickett*, 738 A.2d at 25-26; *Sossong*, 945 A.2d at 788-89 (did not violate lowest bidder requirement); *Hawbaker*, slip op. at 15-17.  Conversely, where the PLA was discriminatory there were also no extraordinary circumstances to warrant the imposition of a PLA.  *Allan Myers*, 202 A.3d at 14-15; *J.D. Eckman*, 202 A.3d at 832; *ABC Keystone II*, slip op. at 34-36.

PLA does not constitute illegal discrimination." *Pickett*, 738 A. 2d at 25; *see also Hawbaker*, slip op. at 14-15; *Allan Myer*s, 202 A.3d at 214. Where the PLA confers a tangible benefit upon specific contractors, like the ability for some union contractors to use their own workforce but no other union or non-union contractors, *Allan Myers*, 202 A.3d at 214-15, the PLA will constitute discrimination. Where the terms of the PLA are simply distasteful or difficult to accept for certain contractors, *Pickett*, 738 A.2d at 25, like the required use of union hiring halls, *Hawbaker*, slip op. at 15-17, the PLA will not be deemed anti-competitive or discriminatory.

As such, here, I disagree with the Majority's conclusion "that the PLA clearly favors union contractors." *Associated Builders and Contractors, Inc., Eastern Pennsylvania Chapter v. Bucks County Community College*, __ A.3d __, (Pa. Cmwlth., No. 1172 C.D. 2025, filed December 5, 2025), slip op. at 7 (*ABC Eastern*). Indeed, as explained above, the use of union hiring halls is a routine characteristic of PLAs and a characteristic we have approved in the past. Moreover, while the PLA guarantees that hiring will occur through union hiring halls, the PLA also requires non-discrimination in referrals, *e.g.*, "[n]o employment applicant shall be discriminated against by any referral system or hiring hall because of the applicant's union membership, or lack thereof." Reproduced Record at 136a. Stated differently, yes, the unions will play a significant role in the hiring process. But the unions are bound not to discriminate on the basis of union membership, such that all union contractors, *like non-union contractors*, must bid with an unknown workforce. Thus, bidders for the Project are "'on an equal footing' and enjoy the same opportunity for open and fair competition." *Allan Myers*, 202 A.3d at 211 (quoting *Philadelphia Warehousing and Cold Storage v. Hallowell*, 490 A.2d 955, 957 (Pa. Cmwlth. 1985)).

Further, the Majority finds it significant that the PLA predates the IFB. *ABC Eastern*, __ A.3d at __, slip op. at 9. I do not. Our precedent concerning PLAs and the extraordinary circumstances that warrant them places substance over form. *Allan Myers*, 202 A.3d at 215 (disregarding a PLA's "boilerplate language" claiming time was of the essence where it was not). In my view, if we are going to scrutinize purported extraordinary circumstances in this manner it must cut both ways and I would not fault a PLA on this basis where, as here, a genuine extraordinary circumstance exists. I am therefore satisfied that the incredibly urgent need to complete the Project within the Grant's deadline provides the necessary extraordinary circumstance to warrant the PLA. In any case, I observe that it is not clear that the PLA has been used for any other construction project aside from the instant Project, *see* Trial Court's Op., 9/18/25, at 2, and that the College nevertheless commissioned a study regarding the PLA's use before issuing the IFB. *See* Trial Court's Exhibit 2 at 452. Thus, setting aside the pedantic debate concerning the use of a preceding PLA, the College commissioned a study concerning the need for a PLA,[7] determined that a PLA was appropriate given the urgency of the Project, and utilized a PLA which it found satisfactory to address the need for it.

---

[7] The scholarly Majority rightly notes, *ABC Eastern*, __ A.3d at __, slip op. at 10 n.4, that the trial court excluded the content of the report as inadmissible hearsay as in *Keystone II*. To the extent I reference the same, it is only for the fact of it, *i.e.*, I do not reference it for the substance of the report. ABC Eastern's own counsel, notwithstanding their objection, did the same at the hearing. *See*, *e.g.*, Trial Court's Hearing, 9/2/25, Notes of Testimony (N.T) at 113 (ABC Eastern's counsel stated: "For that very narrow purpose I think the question [relating to the fact of the report and timeline of events] would be okay. I wouldn't object to it. Thank you, [j]udge."); *see also id.*, N.T. at 114-15. As such, I believe that the sheer fact of the report suggests the College's inclusion of the PLA was far more thoughtful than the Majority gives it credit for. So too, I find the Majority's reliance on Tracy Timby's testimony to be misplaced and uncharitable. Although Timby testified that the decision to use the PLA preceded the issuance of the report, Timby also testified that this was her belief because she did not have firsthand knowledge of that portion of
**(Footnote continued on next page…)**

For all these reasons, if ABC Eastern's burden on this prong is simply to demonstrate that substantial legal questions exist, *SEIU Healthcare*, 104 A.3d at 506, ABC Eastern may only have done so because this Court began deviating from its own precedent in *Allan Myers*. To put a finer point on it, this Court's decision to continue *Allan Myers*' misreading of our precedent means that any non-union contractor can rather easily raise a "substantial legal question" and obtain a preliminary injunction forestalling the use of a PLA. Non-union contractors may even do so where, as here, there is not discrimination between union and non-union contractors and the project's completion is sufficiently urgent to warrant one's use. This same misreading risks creating a chilling effect: public bodies might refrain from entering PLAs even where the situation is truly urgent. After all, there may be greater risk of delay in litigation, like here, than there would be in simply foregoing the PLA. Consequently, I am greatly concerned that this decision will perpetuate the errors that I have discussed above by disposing of the underlying challenge concerning the use of a PLA and effectively serving as the final merits decision.

Without belaboring this final point, I also believe apparently reasonable grounds exist to affirm the trial court's order because the balance of harms weighs in the College's favor. Here, the Grant requires that the Project must be substantially completed by February 2026 and it also requires that the first cohort of students begin the HVAC-training program in April 2026. If further halting the bid process means the College is unable to comply with the terms of the Grant, it may lose the $2 million in funding and it may become ineligible for future federal funds. As I explained in *Associated Builders and Contractors, Inc., Eastern Pennsylvania*

---

the bidding process. *Id*., N.T. at 115. However, as discussed *infra*, it is not dispositive to my analysis: I find the urgency of the College's situation to be plain on its face. The Majority therefore slightly misapprehends my analysis on this point.

MHW-12

*Chapter v. Bucks County Community College* (Pa. Cmwlth., No. 1172 C.D. 2025, filed October 20, 2025) (Wojcik, J.) (single-judge op.), "[t]hese concerns are made only more dire by the now heavily litigated, politically delicate question of federal funding in academia, a tightrope the College, like other higher education institutions, must now walk." Slip op. at 13. To the extent my analysis now differs from my analysis therein, it is because our standard of review requires us to affirm when there are "apparently reasonable grounds" for the denial of a preliminary injunction. With the benefit of further review, I am convinced that the trial court had reasonable grounds to find in the College's favor because the Project's time sensitivity and the attendant risks for failing to comply with the terms of the Grant outweigh any alleged harm to ABC Eastern.

Accordingly, because I would affirm the trial court's order, I respectfully dissent.

_____
MICHAEL H. WOJCIK, Judge

MHW-13